# THE FISHER & CAROZZA BROTHERS CO.

*vs.*

## JOHN N. MACKALL et al., Constituting the State Roads Commission of Maryland, et al.

*State Roads Commission—No Liability in Damages—Alteration of Plans—Power of Equity.*

Since the funds under the control of the State Roads Commission are appropriated by law to the construction and maintenance of the roads, and it has no authority to raise money for the purpose of paying damages, equitable relief against the Commission cannot be denied on the ground that plaintiff has an adequate remedy at law in an action for damages for breach of contract. p. 594

Where a contract with the State Roads Commission reserved to the Commission the right to make alterations in the plans of the work, a fair sum, to be agreed upon by the Commission and the contractor, to be allowed in case such alterations increased or decreased the cost of the work, a court of equity cannot, after the making of alterations in the original plans, require the Commission to execute a supplemental contract containing provisions as to which plaintiff contractor and the Commission failed to agree, since this would involve a determination by the court of matters that are committed, so far as the State is concerned, to the exclusive judgment and discretion of the Commission. p. 595

One who is not suing as a taxpayer of the State, and who does not appear to be such, cannot maintain a suit to restrain the execution, on behalf of the State, by the State Roads Commission, of an illegal contract, or to enjoin the unlawful expenditure by such Commission of the funds of the State, even though he previously had a contract for the same work, which the Commission terminated without his consent. p. 597

*Decided June 27th, 1921.*

Appeal from the Circuit Court No. 2 of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*John L. V. Murphy,* with whom was *Edwin H. Brownley* on the brief, for the appellant.

*Alexander Armstrong, Attorney General,* and *George M. Brady,* with whom was *J. Purdon Wright* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the court.

The bill of complaint in this case was filed in Circuit Court No. 2 of Baltimore City on the 13th of July, 1920, by The Fisher & Carozza Brothers Company, a corporation "engaged in general contracting and road and bridge building," against John N. Mackall, Omar D. Crothers and C. D. Weinbrenner, constituting the State Roads Commission, and the McLean Contracting Company, a corporation engaged in the contracting business. It alleges that, prior to the 5th of November, 1919, the State Roads Commission, hereinafter referred to as the Commission, invited proposals for the erection of a concrete bridge in Somerset and Wicomico Counties, across the Pocomoke River, at Pocomoke City, Maryland, in accordance with the specifications, form of contract and "proposal form" of the Commission, and that on November 5th, 1919, the plaintiff "was awarded the contract" at the price of $67,-153.00, and a formal contract was executed by the plaintiff and the Commission on the 29th of November, 1919. That the principal part of the work to be done under the contract was the building of two "trunnion piers * * * which were to be carried solid from an elevation of 12.25 feet below the datum line to an elevation of 1.0 feet above datum," and that the approximate quantity of concrete to be used in said piers

was 925 cubic yards. That on March 16th, 1920, John N. Mackall, who at that time was the chief engineer of the Commission, made certain alterations in the plans and character of the work by lowering the foundations of the piers, and requiring them to be "of hollow construction, with steel reinforcement, instead of solid construction," which alterations, notwithstanding the increase in the depths of the foundations, reduced the amount of concrete required from 925 to 806 cubic yards. That the contract and specifications reserved to the engineer the right "to make such alterations in the plans or in the character of the work as may be considered necessary or desirable from time to time to complete fully and perfectly the construction of the roadway," and further provided: "Should such alterations in the plans result in any increase or decrease of the quantity of work to be performed, the contractor shall accept payment in full at the contract unit price for the actual quantities of work done; or should such alterations in the character of the work be productive of increased cost or result in decreased cost to the contractor a fair and equitable sum therefor, to be agreed upon in writing by the contractor and the Commission before such work is begun, shall be added to or deducted from the contract as the case may be. No allowance will be made for anticipated profits." That said alterations in the plans made a material change in the character of the work and indicated "a greatly increased cost" to the plaintiff; that as originally proposed the piers were without steel reinforcement, and could have been built in a box constructed for the purpose of holding the concrete in place until it set, but that the revised plans required, if the work was to be properly done, the erection of a watertight coffer dam, from which the water could be pumped and the inside kept dry so that the steel reinforcement could be accurately placed, and the inside forms could be erected within the coffer dam to hold in place and mold the walls of the hollow pier. That the plaintiff was advised by competent engineers that the cost of preparing for concrete under the original plans would have been $6,944, but that the cost for

preparing for concrete under the revised plans would be in excess of $22,961, and that there should also be an allowance of $5,500 to cover the risk of coffer dam work in deep water and soft mud. That after the execution of said contract, and prior to March 1st, 1920, the plaintiff entered into contracts for the furnishing of materials to be used in the construction of the bridge, contracted for the use of a pile driver, employed an engineer, superintendent and foreman, secured the "necessary constructing force," and was prepared to proceed promptly with the prosecution of the work and to complete the same before November 1st, 1920, as provided in the contract. That prior to March 1st, 1920, the plaintiff requested permission of the engineer to begin the work, and was advised that "the completed plans" were not ready; that thereafter, on March 16th, 1920, the plaintiff received from the engineer the revised plans, and after making the necessary examination and calculations wrote to the Commission on March 16th, 1920, calling attention to the changes referred to above and stating that it was ready to start the work at once on the original plans, but that the revised plans would greatly increase the cost of the work, and that a fair and equitable sum to be paid therefor "should be agreed upon in writing by the contractor and Commission before the work under the revised plans could be begun." That "thereafter certain correspondence ensued" between the chief engineer of the Commission, wherein the engineer contended that the revised plans "did not entail a different form of construction from that originally intended" and the plaintiff contended that the proper method of construction was as has been stated; that as the result of said correspondence the plaintiff and the Commission reached an agreement by which the plaintiff was to do the work and receive certain additional compensation, and that in order to comply with the provisions of the contract requiring agreements for extra compensation to be in writing before the work was begun, the Commission, on May 5th, 1920, submitted to the plaintiff for its "signature" a supplemental contract purporting to contain said agreement. That

on the 8th of May, 1920, counsel for the plaintiff wrote to the Attorney General, or his assistant, as the attorney for the Commission, saying that the plaintiff would not execute the supplemental contract unless certain modifications were made, and that after the Attorney General received the letter the plaintiff received a letter from the Commission, dated May 14th, 1920, advising the plaintiff that the Commission had "terminated" the contract with the plaintiff of November 29th, 1919, and had awarded the contract for the construction of the bridge to the defendant, the McLean Contracting Company. That the Commission, in attempting to terminate said contract, pretended to be acting in accordance with paragraph 63 of the specifications and contract, which contains the following provision:

"63.    Annulment of Contract.

"If the contractor fails to begin work under contract within the time specified * * * the engineer shall give notice in writing to the contractor and his surety of such delay, neglect or default, specifying the same, and if the contractor within a period of ten days after such notice shall not proceed in accordance therewith, then the Commission shall upon written certificate from the engineer of the fact of such delay, neglect or default, and the contractor's failure to comply with such notice, have full power and authority without violating the contract to take the prosecution of the work out of the hands of said contractor."

The bill further alleges that the Commission attempted to award a contract for the work as altered to the McLean Contracting Company "without advertisement or competitive bidding," and without complying with the provisions of Section 36 of Article 91 of the Code, which "provides for the manner in which" such contracts shall be awarded, and has agreed to pay the McLean Contracting Company a sum in excess of $85,000. That the Commission threatens to hold the plaintiff for the difference between the amount it pays the McLean Contracting Company and the original contract price, has

taken possession of the materials furnished by the plaintiff, and has agreed to permit the McLean Contracting Company to use the same at a price to be agreed upon by the Commission and said company. That the McLean Contracting Company is about to proceed with the erection of the bridge under said pretended contract, and the Commission proposes to pay over to it the money appropriated for said work; that such action constitutes a fraud upon the rights of the plaintiff, and unless the Commission and the McLean Contracting Company are restrained from proceeding with said work the plaintiff will suffer irreparable loss, the value of its contract with the Commission will be destroyed, and the money out of which it might otherwise be paid will be dissipated and lost.

The bill prays (1) that the Commission be enjoined from paying to the McLean Contracting Company "any sum or sums of money out of any monies appropriated for the purpose of constructing" said bridge, or "out of any funds available for such purpose"; (2) that the Commission "be commanded by decree" of the court "to execute said supplemental agreement with the modifications proposed by the" plaintiff; (3) that the plaintiff "be allowed such further sum in addition to the price or prices allowed in said contract or said supplemental agreement as may compensate it for the loss, damage and delay occasioned by the failure of" the Commission "to permit" the plaintiff "to proceed with the erection of said bridge at the time or times mentioned in said contract and supplemental agreement"; (4) "that the alleged agreement between the" Commission "and the McLean Contracting Company for the erection of said" bridge "be declared null and void"; (5) that the McLean Contracting Company be restrained from proceeding with the erection of said bridge, "and interfering with" the plaintiff "in the erection thereof, and that it be commanded to remove therefrom all equipment, material and supplies, which it may have caused to be deposited upon the site of said work," and (6) for general relief.

In response to an order requiring the defendants to show cause why the relief prayed should not be granted, the defendants filed separate demurrers to the bill, and this appeal is from the decree of the court below sustaining the demurrers and dismissing the bill.

The contention of the appellant is that the State Roads Commission is an agency of the State, against which a suit to recover damages for the alleged breach of its contract with the plaintiff cannot be maintained, and that unless the jurisdiction of a court of equity can be invoked to declare the contract with the McLean Contracting Company null and void, and to compel the Commission to execute the supplemental agreement, without the objectionable features referred to, and to allow the appellant to build the bridge, the appellant will be without any remedy for the loss it will sustain, while it is insisted on behalf of the Commission (1) that its immunity from suit is absolute, and that in the absence of statutory authority, the Commission cannot be sued, either in law or in equity, and (2) that, if this contention is not sound, the plaintiff has a complete and adequate remedy at law for breach of its contract.

Prior to its amendment by Chapter 536 of the Acts of 1916, Section 78 of Article 91 of the Code provided that the circuit court of any county where the powers conferred upon the Commission have been, or are about to be exercised, "shall have original jurisdiction of any cause of action or complaint which may be brought by the state roads commission, the county commissioners for such county, or any person or corporation aggrieved, for a violation or contemplated violation of any of the provisions of this sub-title or contract thereunder with respect to any road or roads within such county." In the case of *Weller* v. *Mueller*, 120 Md. 633, this Court held that under that section taxpayers of Baltimore County were entitled to an injunction restraining a diversion by the Commission of funds appropriated for the construction and maintenance of roads in that county, and that case is cited in *Magruder* v. *State Roads Commission*, 125 Md. 525, as set-

tling the question of the right of the courts to prevent the
Commission from diverting funds appropriated for the build-
ing, etc., of one set of roads to the construction of others. In
the case of *State Roads Commission* v. *Postal Tel. Co.*, 123
Md. 73, where the suit was brought by the Commission to
recover for the use by the defendant of the Conowingo bridge,
the court said: "The Commission, by the terms of the act
creating it, was not in a full sense a corporate body, yet was
a *quasi* corporation, vested with powers of control and regula-
tion over the public highways, and charged with the duty of
administering and supervising that department of the State.
For all matters coming within the scope of their duties and
obligations they could therefore sue, and were liable to be
sued." In support of that view the court cited the following
Maryland cases: *O'Neal* v. *School Commissioners*, 27 Md.
227; *School Commissioners* v. *School Commissioners*, 35 Md.
201; and *Clark* v. *Harford Agric. & Breed. Assoc.*, 118 Md.
608. A similar statement is found in *Weddle* v. *School Com-
missioners*, 94 Md. 334. The right of the Commission to
maintain such suits was further sustained in *Postal Tel. Co.*
v. *State Roads Commission*, 127 Md. 243; *Ches. & Pot. Tel.
Co.* v. *State Roads Commission*, 134 Md. 1; *Am. Tel. & T.
Co.* v. *State Roads Commission*, 134 Md. 11, and was also
recognized in *Ches. & Pot. Tel. Co.* v. *State Roads Commis-
sion*, 132 Md. 194. In *Weddle's case*, however, notwithstand-
ing the statute authorized a suit by or against a board of
county school commissioners, the court held that the board
was not liable in an action of tort because it had no power "to
raise money for the purpose of paying damages," and the
same doctrine was held to apply in *State* v. *Rich*, 126 Md.
643, where the State Roads Commission was joined with an-
other defendant in a suit to recover damages for injuries, re-
sulting in death, alleged to have been caused by their negli-
gence. In the latter case, JUDGE URNER, speaking for this
Court, said: "In view of the relation which the Commission
thus bears to the State, it is entitled, in a case like the pres-
ent, to the benefit of the State's immunity from suit, unless

*it* has been made liable to be sued for negligence by legislative enactment." It was further said in that case: "It cannot be successfully contended that the State Roads Commission can rightfully apply any of the funds in its hands to the payment of damages for personal injury, or that it is vested with any authority to raise money for that purpose. The plain and explicit provisions of the law defining the powers of the Commission and directing the application of its funds, effectually prevent such a conclusion."

Applying the doctrine of *Weddle's case* and *State* v. *Rich, supra,* to the case we are now considering, it is clear that as the funds under the control of the Commission are appropriated by law to the construction and maintenance of the roads, and it has no authority to raise money for the purpose of paying damages, equitable relief in this case cannot be denied on the ground that the plaintiff has an adequate remedy at law in an action for damages for breach of its contract.

In support of their respective contentions of absolute immunity, and immunity from actions at law for breach of contract, our attention is called, by the Attorney General, to the fact that Section 78 of Article 91 of the Code was repealed by Chapter 536 of the Acts of 1916 and re-enacted without the provision authorizing suits by and against the Commission, and, by counsel for the appellant, to Chapter 505 of the Acts of 1920, which authorized the Commission to adjust the loss of the contractor mentioned in the Act on the ground that the Commission was, as therein recited, "immune from suit." While it may be noted that the statement quoted from *Commission* v. *Postal Tel. Co., supra,* was not based on the provisions of Section 78 of Article 91 of the Code, we are not required in this case to express any opinion as to the effect of the Acts of 1916 and 1920 referred to, and we rest our decision that an action of law for breach of contract is not available against the Commission on the doctrine of the two cases last mentioned.

It is said in 36 *Cyc.* 880, "in the absence of a statute authorizing suits against the State, the contractor cannot en-

force performance or recover damages, and his only remedy is an appeal to the Legislature for relief." The relief asked for by the plaintiff in this case goes even further than specific performance of the contract signed by it and the Commission, and seeks a decree requiring the Commission to execute a contract containing provisions as to which the plaintiff and the Commission failed to agree. As set out in the bill, the contract executed by the plaintiff and by the Commission, "acting for and on behalf of the State," expressly reserved to the chief engineer of the Commission the right, with the approval of the Commission, "to make such alterations in the plans or in the character of the work as may be considered necessary or desirable from time to time to complete fully and perfectly the construction of the roadway," and further provided that in case such alterations increased or deceased the cost of the work, a fair sum therefor, to be agreed upon by the contractor and the Commission in writing, should be added to or deducted "from the contract," and the bill alleges that alterations in the plans were made by the chief engineer; that the plaintiff and the Commission agreed upon the additional compensation to be allowed the plaintiff; that, in accordance with the contract, the Commission submitted to the plaintiff "for its signature" a supplemental agreement for such additional allowance, and that the plaintiff refused to execute it without **certain modifications, not in regard** to the amount agreed upon, but which would eliminate certain provisions inserted by the Commission for the evident purpose of insuring the satisfactory completion of the work. The prayer of the bill is that the Commission may be required to execute the supplemental agreement referred to, with the modifications proposed by the plaintiff. In other words, the plaintiff asks the court to decide what the supplemental agreement shall contain, and to determine matters that are committed, so far as the State is concerned, to the exclusive judgment and discretion of the Commission. Such relief would not only do violence to the express terms of the contract, but is obviously beyond the power of a court of equity to grant.

Even if we assume that the averments of the bill show that the failure of the plaintiff to do the work mentioned in the contract was due to the fault of the Commission, what we have said in regard to an action at law against the Commission for breach of contract disposes of the prayer asking for damages resulting from such breach.

The remaining allegations of the bill relate to the contract between the Commission and the McLean Contracting Company, and contain the averments that said contract was awarded by the Commission without advertising for bids or competitive bidding, and without having complied with the provisions of Section 36 of Article 91 of the Code. That section provides that the Commission, when about to construct or improve any highway, shall give the county commissioners of the county or counties in which it lies a copy of the plans and specifications therefor, and notice that it is about to proceed with the work, and

"shall thereupon advertise for at least two weeks in one or more newepapers published in each county in which the highway lies, and for three consecutive issues in at least one daily newspaper published in Baltimore City, for sealed proposals for the construction or other improvements of said highway, accurately describing the same and stating the time and place for opening said proposals, and reserving the right to reject any and all proposals; said proposals shall be publicly opened at the time specified in said advertisement, and the contract for such work or for the supplies and materials required for such construction or work or for the supplies and materials required for such construction or improvement shall be awarded by the Commission to the lowest responsible bidder, unless, in the opinion of said Commission, the interest of the State shall be better served by awarding the contract to some other bidder, when this may be done; * * * provided, however, that said Commission, with the consent of a majority of all of its members, may itself do any part or parts of such work under such conditions

in every respect as it may prescribe by day labor,
whenever the chief engineer, in writing, shall recom-
mend that course."

As we have said, in *Weller* v. *Mueller, supra,* and *Magruder*
v. *Commission, supra,* this Court held that the Commission
could, in a suit by taxpayers, be restrained from misapplying
the funds in its hands.   In the case of *Schley* v. *Lee,* 106 Md.
390, the court sustained the right of taxpayers to maintain a
bill to enjoin the Tax Commissioner from making an illegal
assessment of shares of stock of a corporation, and in *Christ-
mas* v. *Warfield,* 105 Md. 530, JUDGE BURKE, speaking for
the court, said that a taxpayer of the State had such an inter-
est in the subject matter as entitled him to maintain a suit to
restrain the unauthorized destruction of State property, or the
unwarranted expenditure of the funds of the State.   See also
*Baltimore* v. *Keyser,* 72 Md. 106; *Konig* v. *Baltimore,* 126
Md. 606, and *Konig* v. *Baltimore,* 128 Md. 465, where the
court held that contracts made contrary to the provisions of
an ordinance, of the city charter, were invalid, and that their
performance could be restrained at the suit of taxpayers of
the city.

This suit, however, was not brought by the plaintiff as a
taxpayer of the State, on its own behalf and on behalf of
other taxpayers of the State, nor does it appear from the aver-
ments of the bill that it was such a taxpayer.   The bill does
not therefore bring the plaintiff within the class of persons
entitled to maintain a suit to restrain the execution on behalf
of the State of an illegal contract, or to enjoin the unlawful
expenditure of the funds of the State.

As the bill does not present a case entitling the plaintiff to
any relief against the defendants, the decree appealed from
must be affirmed.

*Decree affirmed, with costs to the appellees.*