## LEATHERMAN *v.* LONG

[No. 34, September Term, 1972.]

*Decided November 9, 1972.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH and LEVINE, JJ.

*Raymond J. Coughlan, Jr.,* and *Donald E. Sharpe* for appellant.

*James McSherry,* with whom were *Frederick J. Bower* and *Peyton Paul Phillips* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Frederick County, in Equity, dated November 10, 1971, in which the chancellor (Clapp, J.) found that (1) a deed, dated March 17, 1947, purporting to convey the Levi Leatherman farm in Frederick County to the appellant, John Daniel Leatherman (John Daniel), by his mother and father, Norma Leatherman (Norma) and Orestes F. Leatherman (Orestes) (who owned the farm as tenants by the entireties), was not in fact executed by Orestes; (2) John Daniel had not established title to the farm by adverse possession; and, (3) John Daniel had not established a constructive trust on the farm devised by Orestes to Mary K. Long, the appellee, nor any agreement by Orestes to convey the farm to John Daniel.[1]

For reasons later set out in this opinion, we have concluded that the case will be remanded to the lower court without affirmance or reversal, pursuant to Maryland Rule 871 a, for further proceedings.

The bill of complaint was filed by Mary K. Long, the appellee, on August 8, 1968. She alleged, in substance, that she was the devisee of the Levi Leatherman farm, containing 156¼ acres of land in District No. 20 of Frederick County, under the will of Orestes; that John Daniel and his wife claimed the farm under a deed dated March 17, 1947, and recorded among the Land Records of Frederick County on January 30, 1968, purportedly conveying the farm to John Daniel; and that the deed was void because of the lack of an acknowledgement required by Maryland law and the signatures of the grantors were forged. She prayed that the deed be declared "fraudulent, null and void" and for other relief.

After the defendants had answered, denying the allegations of the bill of complaint for the most part, they moved for a separate trial under Rule 501 a of the claim

---

1. John Daniel died on April 17, 1972, pending the appeal and his heir, Frances C. Leatherman, pursuant to Maryland Rule 865 b, has been substituted as the appellant, pursuant to an order of this Court dated June 28, 1972.

of forgery. This motion, which had the consent of the plaintiff, was granted by the chancellor. The trial of this single issue was set for December 17, 1970. Shortly before this trial date, the defendants terminated the services of their attorneys and on the day of trial verbally requested the chancellor for a continuance because of the lack of counsel or witnesses. This request was refused by the lower court and the hearing went forward with the defendants trying their own case. The plaintiff presented testimony, both expert and lay, which tended to prove that the signature of Orestes on the deed was signed by someone other than Orestes and, further, that all four signatures, *i.e.*, those of Orestes, his wife, Norma E. Leatherman (Norma), and of the *two* witnesses, (Rev.) Clarence G. Leatherman and Elfie I. Leatherman, were all written by the same person. The defendants attempted to cross-examine the plaintiff's witnesses and proffered that their expert witnesses would testify that the signature of Orestes on the deed was genuine. At the conclusion of the testimony, the defendants again moved for a continuance and, finally, upon their agreement to pay the expenses of the expert witnesses of the plaintiff to appear at a second hearing, the chancellor scheduled a second hearing on December 30, 1970, to permit the defendants to present the testimony of their expert witnesses.

The defendants employed new counsel, who on December 28, 1970, moved, on behalf of the defendants, for a continuance of the hearing set for December 30 on the ground that no transcript of the prior testimony in the case could be obtained until January 25, 1971, and also because Aaron Zeligman, the expert witness of the defendants, had suffered a heart attack and could not appear on December 30. The chancellor verbally denied this motion.

On December 30, 1970, new counsel appeared for the defendants and moved for a mistrial and for a continuance. When the lower court denied this motion, they did not present any evidence, after which the chancellor rendered an oral opinion finding that the purported sig-

nature of Orestes on the deed was not his signature and, therefore, the deed was ineffective to transfer the Levi Leatherman farm to John Daniel.

On January 29, 1971, the deposition of Aaron Zeligman was taken. He testified that the signature of Orestes on the deed was made by the same person who signed the known signature of Orestes as endorsements on two checks made payable to his order and which cleared the banks. The transcript of this deposition was made a part of the record in this case, although it was not introduced into evidence.

The plaintiff, on July 6, 1971, filed a petition praying for a decree in her favor and the chancellor signed a show cause order stating that the defendants had until July 29, 1971, to show cause why a decree should not be entered against them. Within the time allowed, the defendants answered alleging that other issues, including adverse possession and equitable title in the defendants to the farm, remained to be tried. A hearing date of September 10, 1971, was scheduled by the chancellor and a trial before him began on that date.

At the hearing, John Daniel testified that he was then 66 years of age, and resided at New Oxford, Pennsylvania. He first lived on the Springfield farm (adjoining the Levi Leatherman farm) with his parents, Orestes and Norma, in 1909. He was their only child. His father was a farmer and he assisted his father with the farming operations. He attended the University of Maryland and graduated in 1928 with a B.S. degree in agriculture. After graduation, he returned home and helped at both the Springfield farm and the Levi Leatherman farm, which latter farm had been acquired in August 1928. He continued to help on the two farms until 1929 when he began his teaching career, teaching vocational agriculture for 14 years. Thereafter, he went with the Farm Security Administration (FSA), later becoming State Director of FSA for Maryland and Delaware. He quit this employment in April 1947 because his mother, Norma, "demanded that I come home and operate the farms." His

father, Orestes, was present when Norma demanded that he come home and when she stated that the Levi Leatherman farm "would definitely be mine." John Daniel did give up his position, returned home and resided on "the Levi Leatherman farm; my farm." He never paid any rent to anyone for occupation of that farm and from 1947 until his father's death on June 22, 1967, paid all of the taxes on that farm. The tax bills came in the name of his father and he gave his father the money to pay them. Various cancelled checks were exhibited and were identified by John Daniel as checks given by him to pay the taxes on the Levi Leatherman farm. While on the Levi Leatherman farm after April 1947, he spent at least $20,000 for repairs and permanent improvements on that farm as disclosed by various records. Some additional records had been lost.

The Levi Leatherman farm, according to other witnesses, had been purchased by Norma from money she had inherited for John Daniel, she wanting "him to come home and fix it." It was titled in the name of Norma and Orestes, as tenants by the entireties.

On March 17, 1947—John Daniel's birthday—Orestes, Norma, John Daniel and the Reverend Clarence G. Leatherman and his wife, Elfie, were at the home of Clarence Leatherman in Hummelstown, Pennsylvania. At that time his mother, Norma, delivered to him a deed dated March 17, 1947, on which the names of Orestes and Norma appear as grantors. The names of Clarence Leatherman and his wife, Elfie, appear as witnesses. Orestes was present when the deed was delivered by Norma to John Daniel but did not say anything.

The deed of March 17, 1947, recites a consideration of "the sum of TEN DOLLARS and other valuable considerations, the receipt whereof is hereby acknowledged." The farm conveyed by the deed is described as containing 156¼ acres, located in District No. 20 in Frederick County "and more fully described in the deed of Rev. Clarence G. Leatherman and Elfie I. Leatherman, his wife, dated the twenty-eight day of April, A.D. 1928,

and recorded among the Land Records of Frederick County in Libre No. 368, Folio 439 &c.; and being the same land which was conveyed to the said Orestes F. Leatherman and Norma E. Leatherman, his wife, by the said deed." The conveyance to John Daniel is in fee simple and the deed contains the usual covenants of special warranty and further assurances. Signatures of Orestes and Norma appear to be added and "(SEAL)" appears after each signature. As already indicated, the signatures of Clarence G. Leatherman and Elfie I. Leatherman, with the address "Hummelstown, Dauphin County, Pennsylvania" appear under the designation: "Test:." There was no acknowledgement appearing on the deed. Norma died in 1950.

In 1961, the State Roads Commission of Maryland instituted a "quick-take" eminent domain proceeding against Orestes to acquire a portion of the Levi Leatherman farm for the widening of U.S. Route No. 15. The negotiations for the price to be paid for the taking took place at the home of Orestes on the neighboring farm and John Daniel was present during the negotiations. Finally, an option was obtained for the purchase of the land taken in the name of Orestes as owner and John Daniel as tenant. When Richard L. Schindel, the right-of-way agent for the State Roads Commission who negotiated the option for the Commission, was called as a witness for the plaintiff and was asked by the chancellor why he listed John Daniel as a tenant, he stated: "He at that time, sir, was on the property and that is why we listed him as the tenant." His records did not indicate when he learned that he "had to negotiate with John D. Leatherman." The check from the Commission was made payable to Orestes and he did not know if John Daniel consented "to letting his father get all his money."

Also in 1961, John Daniel discontinued active farming on the Levi Leatherman farm. He had a complete sale of his farm equipment. Thereafter, he rented the farm for cash and collected the rent, but paid over no part of the rent to his father, Orestes.

In March 1963, John Daniel received a letter from his father, Orestes, dated March 11, 1963. This letter, which we consider to be perhaps the most important piece of evidence in the case, is not mentioned in the opinion of the chancellor, as we will consider more fully later in this opinion. The letter is as follows:

"Thurmont, Maryland
March 11, 1963
Monday

"Dear John Daniel,

"I have been having some more pain with my leg and it is still red but it is not gathering. If it gets worse I will let you know.

"It is so bad that you folks have to defend yourselves and spend all that money.

"I am thankful they cannot attach your farm in that court action. While I am on the matter there are some things that we ought to discuss about the farm. It was your mother's intent for you to have the Levi Farm when she bought it for you out of the money she received from her father's estate. She bought it from the Leatherman heirs. I was glad that she bought it so that you could operate both farms. This you have done to meet your part of the bargain. Now the Levi Leatherman Farm is yours by certainty of Deed and intent of conveyance of the Deed when we executed and delivered it to you on the 17th day of March 1947. It was bought from Rev. Clarence G. Leatherman and his wife Elfie, as it shows by the records in the Frederick County Courthouse. It is Libre 366—F. 84 &c and our Deed to you is Libre 368 F. 439 &c. Clarence's father was Levi Leatherman—son of Daniel Leatherman—my father and your grandfather—and it has come down from father to son and now it is yours. This farm has been in

the family nearly one hundred and fifty years and now that it is yours take care of it.

"I, hereby confirm with the full intent of the conveyance of the Deed to the Levi Leatherman Farm to you, my son, that being the Deed delivered to you on 17th March 1947.

"There are also a number of things we ought to discuss about the problems here at Springfield and what you will want to do about them before another year gets under way. In the meantime take care of yourselves and come home often. Win that case! Love to all of you. Dad

/s/ *Orestes Franklin Leatherman* (S)."

Not only is the genuineness of the signature of Orestes to this letter not challenged, but John R. Smith, a handwriting expert of the plaintiff, stated that, in his opinion, Orestes "did write this signature that appears at the bottom of this page [of the letter of March 11, 1963]." In addition to this, the envelope in which John Daniel received the letter was postmarked "THURMONT MD. MAR 15 2 PM 1963" and, in the handwriting of Orestes, is addressed to "Mr John D Leatherman 810 Lynore Ave. Linthicum Heights Maryland" with a return address at the upper left-hand corner "Orestes F. Leatherman Thurmont Md. Rt 1." The handwriting on the envelope appears to be identical with the signature of Orestes to the letter.

The defendants also produced five witnesses whose testimony corroborated that of John Daniel in regard to his mother's purchase of the Levi Leatherman farm for him and the agreement to give him the farm if he would come home and help with the operation of both farms.

Mrs. Pauline E. Kaminsky, presently a Florida resident and formerly a resident of Michigan and West Virginia, used to visit the Kenneth Leatherman farm every summer beginning in 1941 until the Kenneth Leather-

mans moved to Pennsylvania. The Kenneth Leatherman farm is directly across the road from the Springfield farm where Orestes and Norma lived. She knew them both and used to help Norma who was a cripple. She would massage her feet and neck, peel potatoes and did general help around the house, two or three times a week. In 1946 or 1947, Norma requested her to call John Daniel "to come home full time. She bought that farm for him and wanted him to have it. She wanted him to work it." Mrs. Kaminsky tried to reach John Daniel by telephone in Washington and Baltimore but could not reach him. Norma told her that John Daniel was her only child and she wanted him to have it [the Levi Leatherman farm]. Orestes was present "on occasion" when Norma made these statements. Orestes called the Levi Leatherman farm "John Daniel's farm."

Mrs. Dee L. Leatherman, the wife of the nephew of Orestes, frequently visted her uncle and aunt. Norma "was like a second mother to me." Norma confided in her and, on six or eight occasions, discussed the Levi Leatherman farm with her during the period 1940 to 1950. In 1941, Norma stated that she "wished John Daniel would come back permanently to live." Norma and Orestes "needed him to run both farms." He could help his father who "had a crippled arm and they could use him because labor was getting scarce around there." Both Norma and Orestes referred to the Levi Leatherman farm as "John Daniel's farm." She was familiar with various improvements John Daniel made to the farm, which he operated.

Aldine Ruth Powers, the sister of Mrs. Dee L. Leatherman, spent her summer vacations on the Kenneth Leatherman farm from 1941 or 1942 until 1962. She knew Norma, Orestes and John Daniel. She would help Norma with the housework at times. She and her sister were present in the kitchen when Norma "mentioned the fact that she took her inheritance from her parents and bought John a farm." Orestes was in the kitchen when this statement was made. She also heard Orestes refer to the Levi Leatherman farm as "John's farm. I never

knew any difference." Mrs. Powers also stated that she knew Mrs. Long, the plaintiff, who was a friend of hers.

Kenneth L. Leatherman, a nephew of Orestes, lived on the farm of his father, John Leatherman, across the road from the Springfield farm until 1953. He visted his Uncle Orestes and Aunt Norma from time to time. He was present when discussions took place when Norma had stated that she had bought the Levi Leatherman farm for John Daniel and his Uncle Orestes was present when that was said. He remembered when John Daniel lived on that farm and helped put up some of the improvements John Daniel made to the farm. He recalled that John Daniel later rented the farm but could not recall the names of the tenants. Before moving to Pennsylvania in 1953, he tried to buy or rent the Levi Leatherman farm from John Daniel.

Mary Smith, also a sister of Mrs. Dee L. Leatherman, visited Norma at her home and heard her say that "she bought the farm for John and wanted him to come home and fix it. * * * She bought the farm for John."

In addition to these five witnesses, Hubert R. Brown, who testified in response to a subpoena, testified that in 1964-65 he rented a portion of the Levi Leatherman farm from John Daniel on an oral lease and paid the rent to John Daniel. Another witness, Harold Hood, who lived on a farm directly below the Levi Leatherman farm from April 1949 to April 1950, remembered working on buildings on the Levi Leatherman farm. He was paid $5.00 a day for his work by John Daniel, sometimes in cash sometimes by check. He had heard Orestes refer to that farm "as John Daniel's."

The chancellor filed a written opinion on October 14, 1971, in which he made certain findings of fact including a finding that Norma had stated that she had bought the Levi Leatherman farm for John Daniel. He found that John Daniel went to live on the property in 1936, but was employed elsewhere until 1947, having living quarters at his place of employment but returning to the farm from time to time. He returned to the farm full time in 1947 and operated it full time until about 1962.

He paid no rent for the premises but did expend certain sums for repairs, taxes, insurance and capital improvements in order to maintain the milk marketing permit for the farm. He reviewed the State Roads Commission's taking in 1961, finding that John Daniel had participated in the bargaining negotiations and noted that John Daniel signed the option as tenant, his father being designated as owner. He found that all payments for the fee simple interest were made to Orestes and that John Daniel made no claim for, and did not share in these payments. The chancellor also found that John Daniel and his wife sold their dairy herd and farming equipment in 1962 and thereafter leased the real estate until Orestes' death on June 22, 1967. The plaintiff, Mary K. Long, and her husband became tenants of Orestes for the Springfield or home farm not too many years after Norma died in 1950 and as part of the lease, Orestes was permitted to make his home with them which he did until the time of his death.

The chancellor concluded that the claim of title by adverse possession was not viable because John Daniel "never made claim of ownership adverse to his parents during the lifetime of either." He was of the opinion that references to " 'John's farm' could mean merely that it was expected that John as the only child of Orestes and Norma would succeed to the farm at his parents' death. Moreover, the defendant without protest affixed his signature to the State Roads Commission option describing him as a tenant and made no claim to the proceeds of the sale of the fee simple interest."

In regard to the claim of equitable title, the chancellor concluded that John Daniel had not established an oral trust by clear and convincing evidence, again referring to the signing of the option designated him as a tenant. In regard to the expenditures made by John Daniel on the farm, the chancellor was of the opinion that they "were largely designed for his own comfort or for the maintenance of his dairy farm operations. They were made from the income of the farm and not from any separate resources of the defendant."

There is a striking omission from the chancellor's findings of fact and opinion in that there is no mention or evaluation of the letter of March 11, 1963, the signature on which was established as being that of Orestes and which, on its face, confirms the deed of March 17, 1947. It also indicates that there was indeed a contract and John Daniel had operated both farms "to meet your part of the bargain."

We are unwilling to reach a final decision in this case without having the chancellor reconsider the case in the light of the letter of March 11, 1963, and make whatever findings he may deem appropriate in regard to that letter and its effect upon the issues in the case. We are, therefore, remanding the case to the lower court without affirmance or reversal so that this can be done by the chancellor. In our opinion, it will be necessary to have a further hearing on this aspect of the case. At this hearing the chancellor should give the surviving defendant and appellant the opportunity to present any expert or other evidence she may have and wish to present in regard to the genuineness of the signature of Orestes on the deed of March 17, 1947. Under these circumstances, it is unnecessary for us to consider the strongly pressed argument of the appellant that the chancellor abused his discretion in denying, on December 28, 1970, the request of counsel for the defendants of a continuance of the hearing set for December 30, 1970, at which hearing counsel for the defendants moved for a mistrial and presented no evidence.

> *Case remanded to the Circuit Court for Frederick County, without affirmance or reversal, for further proceedings in accordance with this opinion, the costs in the lower court and in this Court to abide the ultimate decision in the case.*