BOARD OF TRUSTEES OF HOWARD COMMUNITY COLLEGE *v.* JOHN K. RUFF, INC.

[No. 74, September Term, 1976.]

*Decided November 29, 1976.*

582

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Richard D. Neidig*, with whom were *Charles A. Reese* and *Reese, Kane & Carney* on the brief, for appellant.

*Ronald B. Sheff*, with whom was *Joseph H. H. Kaplan* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

This appeal, before us by grant of writ of certiorari to the Court of Special Appeals, wherein it was pending argument and decision, is in an unusual posture. The final judgment from which the appeal was taken was an order of the Circuit Court for Howard County entered in an action under the Uniform Declaratory Judgments Act brought by John K. Ruff, Inc. (Ruff) against the Board of Trustees of Howard

Community College (the Board). Code (1974), Courts and Judicial Proceedings Article § 3-411. Ruff sought a declaration of the rights of the parties pertaining to the payment of sales tax under a written contract dated 28 June 1974 between it and the Board whereby Ruff was the general contractor for the construction of a facility for the Board. The court's order, issued upon grant of motion for summary judgment, declared that the Board ". . . shall reimburse [Ruff] for all sales taxes due and to become due for all materials purchased in furtherance of the contract between the parties, including all materials purchased by subcontractors engaged in said project." Costs were assessed to the Board. The appeal is in an unusual posture because its crux is a point which was not raised, tried or decided below and was not presented by the parties on appeal. That point concerns the doctrine of sovereign immunity, or as it is often alternatively referred to, governmental immunity.[1]

It is of no moment that the matter of sovereign immunity was not raised below by the pleadings or otherwise. We made clear in *Bd. of Education v. Alcrymat Corp.*, 258 Md. 508, 516, 266 A. 2d 349, 353 (1970) that ". . . the law is well established that counsel for the State or one of its agencies may not either by affirmative action or by failure to plead the defense, waive the defense of governmental immunity in the absence of express statutory authorization, or by necessary implication from a statute . . . ."[2] We must consider whether the doctrine of sovereign immunity is applicable in this case even though it was not previously raised by the parties.

---

1. The history of the doctrine is fully discussed in Godwin v. County Comm'rs, 256 Md. 326, 330-335, 260 A. 2d 295, 297-299 (1970).

2. Prior to 1 April 1976, Maryland Rule 323 b, entitled "Motion Raising Preliminary Objection" provided that the defense of governmental immunity shall be raised by motion pursuant to the Rule. In Bd. of Education v. Alcrymat Corp., 258 Md. 508 (1970), we noted that the defense could not be waived by failing to raise it as required by the Rule. We suggested that the Rule needed clarification. As rewritten by the amendment of 1976, the Rule provides that the defense of governmental immunity constitutes a ground for a motion raising preliminary objection when the party raising the defense is a governmental body or an agency thereof, § a, and that such motion may be filed at any time, § b.

## I

Once venerated, recently vilified, and presently substantially limited, the doctrine of sovereign immunity has been long recognized by this Court. We have applied the doctrine for over a century, and a compendium of our discussions regarding it, from *State v. B. & O. R. R. Co.*, 34 Md. 344 (1871), *aff'd*, 21 Wall. 456 (1875) to *Calvert Associates v. Department*, 277 Md. 372, 357 A. 2d 839 (1976), was set out in *American Structures v. City of Balto.*, 278 Md. 356, 359, 364 A. 2d 55, 56 (1976):

> "If an action is brought for a money judgment in contract or in tort against the State or an agency of the State without the State's consent, actual or implied, it must be defended on the ground of sovereign immunity, which cannot be waived unless funds had been appropriated for the purpose or the agency can provide funds by taxation. . . ."

The frequent and increasingly vigorous attacks upon the doctrine have been no more persistent than our refusal to abrogate or modify it by judicial fiat. We have consistently adhered to the view that ". . . it is desirable and in the public interest that any change in the doctrine of sovereign immunity should come from the legislative branch of the State Government rather than from the judicial branch inasmuch as there are fiscal considerations, administrative difficulties and other problems in balancing the rights of the State and its agencies with new possible rights of the individual citizens, which can far better be considered and resolved by the legislative branch than by the judiciary of the State." *Jekofsky v. State Roads Comm'n*, 264 Md. 471, 474, 287 A. 2d 40, 42 (1972).[3] In *Calvert Associates v. Department, supra*, 277 Md. at 381, 357 A. 2d at 843, we found our view strengthened by the fact that the General Assembly in its 1974 session passed House Bill No. 5, which would have killed the doctrine with respect to contract actions. The Governor, however, kept it alive by his veto of

---

**3.** The defense of sovereign immunity was abrogated in Maryland by ch. 53, Acts 1786, but was reinstated by ch. 210, Acts 1820.

the Bill. Such legislation was again enacted by ch. 450, Acts 1976, and this time it was approved to take effect 1 July 1976. It provided that in the absence of a contrary provision, neither the State, its officers, departments, agencies, boards and commissions, or other unit of State government, nor any municipal corporation, or unit of municipal government, nor any county or unit of county government may raise the defense of sovereign immunity in an action based on a written contract brought within one year after the claim arose or the contract was performed, whichever is later. The Act, in any event, does not affect the case *sub judice*. Section 6 of ch. 450 provides that the Act shall not apply to any action based on a contract entered into or executed prior to 1 July 1976.

As far as community colleges are concerned, the doctrine of sovereign immunity has also been partially waived by ch. 549, Acts 1971, which as amended by ch. 528, Acts 1972, and now codified as Code (1957, 1975 Repl. Vol.) Art. 77A, § 10A, provides that the board of trustees of such colleges:

> "[S]hall carry comprehensive liability insurance to protect the board, its agents and employees, and any agents and employees of any college under its jurisdiction . . . .

> \* \* \*

> Nothing in this section shall be construed as affecting the right of the various boards of trustees, on their own behalf, from raising the defense of sovereign immunity to any amount in excess of the limit of the policy or in excess of one hundred thousand dollars ($100,000) in the case of self-insurance."

That law has no application to this case either. As we observed in *Charles E. Brohawn & Bros. v. Board*, 269 Md. 164, 171-172, 304 A. 2d 819, 823 (1973), "[i]t affects only those claims which would be covered by such a 'comprehensive liability insurance' policy and, to the extent of the policy, provides a fund from which these can be paid."

From what we have said thus far, it is manifest that the doctrine of sovereign immunity may still be viable with respect to the contract which is the subject of the action before us. To resolve whether it is applicable to the contract at hand, we must (1) decide if the Board is an agency of the State. If the Board is an agency of the State, the doctrine would be applicable (2) unless sovereign immunity had been waived by statute, expressly or by necessary inference therefrom. Even if sovereign immunity had been so waived, the doctrine would nevertheless be applicable (3) if no funds were available to the Board for satisfaction of a judgment against it on the contract, and no power was reposed in the Board to raise such funds by taxation.

(1)

Over half a century ago this Court observed in *Williams v. Fitzhugh*, 147 Md. 384, 386, 128 A. 137, 137-8 (1925):

"Public education is a highly important interest of the State government. In the promotion of that interest the State is acting through an agency which the Legislature created for that purpose and to which broad administrative powers have been delegated. In performing its functions the State Board of Education is representing and exerting the State's authority. As a governmental agency of the State it shares the immunity from suit to which the State itself is entitled, in the absence of any legislative waiver of that exemption."

In quoting this with approval in *Charles E. Brohawn & Bros. v. Board, supra,* 269 Md. at 169, 304 A. 2d at 822, the Court substituted "Board of Trustees" for "State Board of Education". It was clear that in the frame of reference of the opinion, the Court considered the Board of Trustees of a community college to be an agency of the State for the purpose of sovereign immunity just as the Court had so considered the State Board of Education years ago. In Brohawn we made an examination of the relationship which exists between this State and the community colleges located within its borders in order to determine whether the

Board of Trustees of Chesapeake College inherited from the State the valuable birthright of immunity from suit. It necessarily follows from the flat declaration that the birthright was so inherited, that the Court found that the Board of Trustees was an agency of the State. In this context, we see no material difference between "a regional community college", established for two or more counties, and "a community college", established for a single county. See, Code (1957, 1975 Repl. Vol.) Art. 77A, § 4. In *Prince Geo's Co. v. Bd. of Trustees*, 271 Md. 21, 27, 313 A. 2d 678, 681 (1974), repulsing an attempt by the county to compel the Board of Trustees of Prince George's Community College to contract only through the county's purchasing agent, we said flatly that the community college was not an institution, board or corporation of the county government but ". . . is one created and controlled by the State." It is manifest from the history of the creation of community colleges as traced by us in *Davis v. Montgomery County*, 267 Md. 456, 463-466, 298 A. 2d 178, 183-184 (1972) and *Brohawn*, 269 Md. *supra*, at 167-169, 304 A. 2d at 820-822, that they were State inspired. We note that the State Board for Community Colleges is charged with establishing general policies for the operation of the State's community colleges and must report annually to the General Assembly on the activities of the colleges, Code (1957, 1975 Repl. Vol., 1976 Cum. Supp.) Art. 77A, § 8 (d). Powers enjoyed by the boards of trustees of community colleges are bestowed by public general laws. Art. 77A, § 1 (a)-(m). Each community college is financed, up to certain maximum amounts, by State, local and federal funds, but 50% of its current expenses are received from the State. Art. 77A, § 7. Boards of trustees of community colleges are proper recipients of the State's sovereign power of eminent domain. *Davis v. Montgomery County, supra,* 267 Md. at 468, 298 A. 2d at 185. In short, in light of the pertinent statutes and our decisions, there is no doubt that the Board of Trustees of Howard County Community College [4] is an agency of the State. We so hold.

---

4. The Board of Trustees which is a party to the action here succeeded the original Board of Trustees consisting of the members of the Howard County Board of Education. The present Board has all the powers and

(2)

As the Board here is an agency of the State of Maryland, a litigant is precluded from asserting an otherwise meritorious cause of action against it unless the sovereign immunity which the Board enjoys has been expressly waived by statute or by a necessary inference from such legislative enactment. *Dunne v. State*, 162 Md. 274, 288-9, 159 A. 751, 757 (1932). We find that sovereign immunity with respect to boards of trustees of community colleges has been expressly waived by statute. Chapter 873, Acts 1973, was enacted, according to its title, ". . . to resolve doubts as to whether the trustees of community colleges and trustees of regional community colleges have the power and authority to sue and be sued." It simply added a new subsection (1-1) to § 1 of Art. 77A, effective 1 July 1973, and by it vested such trustees with the power "To sue and be sued." Previous decisions of this Court indicate that the "power" to be sued, bestowed upon an agency of the State by the General Assembly is, with limitations, an express waiver by statute of sovereign immunity as to that agency. In *Weddle v. School Commissioners*, 94 Md. 334, 51 A. 289 (1902), the Board of School Commissioners of Frederick County, entitled to the benefit of sovereign immunity, was made "capable to sue and be sued" by statute and was the defendant in a tort action to recover damages for a pupil's death which was alleged to have been caused by the Board's negligence. The plaintiff urged that the declaration that the Board was capable to sue or be sued should be construed as imposing unqualified liability in that respect. The Court did not agree: "Now it is obvious, we think, that the Legislature intended by the use of the language 'shall be capable to sue and be sued' to restrict the liability of the Boards of County School Commissioners to such suits, in respect to matters within the scope of their duties and to such things as the boards are empowered to do." *Id.*, at 344, 51 A. at 291. As the tort action was not with respect to a matter within the scope of the Board's duties and did not involve such a thing as it

duties of the original Board. Davis v. Montgomery County, 267 Md. 456, 466, 298 A. 2d 178, 184 (1972).

was empowered to do, its sovereign immunity was not waived, and it was not liable in the action. It is implicit in this decision that had the action concerned matters within the scope of the Board's duties and involved such things as it was empowered to do, sovereign immunity would not have been a defense. *See Weisner v. Bd. of Education*, 237 Md. 391, 206 A. 2d 560 (1965); *University of Maryland v. Maas*, 173 Md. 554, 197 A. 123 (1938).

Code (1957, 1975 Repl. Vol.) Art. 77, § 38 provides that a county board of education ". . . shall be capable to sue and be sued . . . ." In light of this law, we said in *Bolick v. Bd. of Education of Charles Co.*, 256 Md. 180, 183, 260 A. 2d 31, 32 (1969): "Boards of education in this State [although State agencies], do not *per se* enjoy governmental immunity from suit . . . ." *See, Thomas L. Higdon, Inc. v. Board*, 256 Md. 595, 261 A. 2d 783 (1970); *Bd. of Education v. Alcrymat Corp.*, *supra*, 258 Md. at 512, 266 A. 2d at 351.

In *Charles E. Brohawn & Bros. v. Board, supra,* decided five days after the approval of ch. 873, Acts 1973, giving boards of trustees of community colleges the power to sue and be sued, but before that law became effective, we discussed the similar provision in Art. 77, § 38, which provided that a county board of education can both sue and be sued. It was argued, relying principally on *Keifer & Keifer v. R. F. C.*, 306 U. S. 381 (1939), that the Board of Trustees of Chesapeake College, as an offspring of the boards of education of the counties concerned, inherited their waiver of immunity conferred by Art. 77, § 38. We found that the reasoning faltered when applied to a regional type college as distinguished from a single county community college. We noted that a regional community college is not brought into being by any action of a county board of education. We also thought that there may be some significance to the fact that although the board of education constitutes the board of trustees of a single county community college, members of the board, but not necessarily all, constitute the regional community college board of trustees. Thus, we did not, expressly or by implication, reject the notion that the grant of statutory

capability to sue and be sued constituted a proper waiver of sovereign immunity, finding only that the *Keifer* rationale did not, in the circumstances, apply to the relationship between county boards of education and regional community colleges.[5]

We conclude that when the General Assembly expressly authorizes suits to be brought against one of the State's agencies, it is the giving of a positive consent and has the effect of waiving sovereign immunity as to that agency within its scope of duties and obligations. It does not necessarily follow, however, that a money judgment may therefore be obtained, even with respect to matters within the scope of the duties of the agency. As we next discuss, an action for a money judgment may not be maintained unless funds had been appropriated for that purpose or the agency can provide funds by taxation.

(3)

Legislative authority for a governmental agency to be sued is not free from restrictions, even though limitations are not expressly made by the Legislature. Such authority does not impose unqualified liability even as to matters within the scope of the agency's duties and obligations. This Court has consistently held that suits may not be maintained unless money has been appropriated for the payment of such damages as may be awarded, or the agency itself is authorized to raise money for that purpose. We said in *University of Maryland v. Maas, supra,* 173 Md. at 558-559, 197 A. at 125:

"The decisions in this state go further than holding that without legislative sanction an arm of the state government . . . may not be sued, and are to the effect that, even though there is a legislative authorization to sue, such suits may not be

---

**5.** *Brohawn* specifically left open the question of whether the statutory waiver of immunity with respect to county boards of education applied under the *Keifer* rationale to single college community colleges. 269 Md. 164, 170, 304 A. 2d 819, 822 (1973). With the enactment of ch. 873, Acts 1973, giving directly to boards of trustees the power to sue and be sued, the question left open in *Brohawn* is moot.

maintained unless funds are available or may be made available by the agency itself for the purpose of paying the claim for damages that may be established by the suit. . . .

So it is established that neither in contract nor tort can a suit be maintained against a government agency, first, where specific legislative authority has not been given, second, even though such authority is given, if there are no funds available for the satisfaction of the judgment, or no power reposed in the agency for the raising of funds necessary to satisfy a recovery against it."

*See Bolick v. Bd. of Education of Charles Co., supra,* 256 Md. at 183, 260 A. 2d at 32, and *Thomas L. Higdon, Inc. v. Board, supra,* applying it; *Weisner v. Bd. of Education, supra; Williams v. Fitzhugh, supra; Fisher & Corozza Co. v. Mackall,* 138 Md. 586, 114 A. 580 (1921); *Weddle v. School Commissioners, supra.* It follows, and we so hold, that sovereign immunity is a valid defense against a suit brought for a money judgment in *assumpsit* under the contract here against the Board unless funds have been appropriated for the payment of such damages as may be awarded, or the Board is authorized to raise funds for that purpose.

## II

We have declared that the Board was an agency of the State. Therefore, the doctrine of sovereign immunity applicable to the State was also applicable to the Board. We have found that the General Assembly directly waived the sovereign immunity of the Board. We have determined that, despite the waiver, sovereign immunity would still be a defense to a suit brought for a money judgment in contract against the Board unless funds have been appropriated for the purpose or the Board can provide funds by taxation. We must next ascertain whether funds are in fact available for the satisfaction of such a judgment or whether there is power reposed in the Board to provide such funds by taxation. The latter is simply answered. Although the Board has the power "To receive local, State, and federal funds to

defray the cost of the college program authorized by [the Community Colleges] subtitle and to accept both conditional and unconditional gifts, as the case may be, from private persons," Code (1957, 1975 Repl. Vol.) Art. 77A, § 1 (g), it has no power reposed in it for the raising by taxation of funds necessary to satisfy any recovery against it for breach of the contract. The former we are not able to determine on the record before us. The matter of the availability of funds here is a question of fact, not law. That matter has not yet been before the trial court.

### III

Of course, all that we have said concerning sovereign immunity would be material only if the Board were liable for the sales tax due and payable in furtherance of the contract. We have indicated that we thought that the trial court was correct in holding that the Board was liable. We now give our reasons.

Early in April 1974 the Board invited general contractors to bid on the construction of a Nurse Education Facility for the College under designated terms, conditions and specifications. Ruff was among those who responded to the invitation, and its fixed-sum bid of $2,088,100 was accepted. Thereupon, the Board and Ruff entered into a written contract on 28 June 1974, using the American Institute of Architects standard form of agreement between Owner and Contractor where the basis of payment is a stipulated sum. Article 1 of the contract pertained to the contract documents. It read:

> "The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, all Addenda issued prior to execution of this Agreement and all Modifications issued subsequent thereto. These form the Contract, and all are as fully a part of the Contract as if attached to this Agreement or repeated herein. An enumeration of the Contract Documents appears in Article 8."

Included in the enumerated documents was "Project Manual for General Construction Work for Nurse Education Facility, Howard Community College, dated April 1, 1974, in its entirety." Specification 1.24 in the Manual was entitled "Limited Sales, Excise and Use Tax Exemption." It stated:

> ".01 Materials provided for this project will be tax exempt under the following tax exempt numbers: Maryland State, Tax Exemption — #08798; Federal Tax Exemption — #52-70-0024K.
>
> .02 Exemption certificate will be issued by the Owner to the successful bidder."

In establishing the fixed-price amount of its bid, Ruff did not include any sums representing Maryland sales tax on the purchase of materials for the construction of the facility, and the subcontractors who agreed with Ruff to perform part of the work covered by Ruff's contract with the Board, did not include any such sums in their bids. Pursuant to Specification 1.24.02 the Board gave Ruff Exemption Certificate No. 08798. It had been issued by the Comptroller of the Treasury on 13 April 1970 and authorized exemption from payment of sales tax on those purchases of taxable personal property or services purchased for use in carrying on the work of the Board. The construction of the facility began.[6]

It appeared thereafter that the facility construction project was not exempt from Maryland sales tax. The Comptroller of the Treasury so informed Ruff and its subcontractors. On 23 September 1975 the State filed a tax lien against Ruff for sales taxes due from 23 September through 27 December 1974, plus penalties and interest, and the subcontractors, complaining that they had bid on the basis of sales tax exemption, demanded that Ruff adjust their contracts to include additional sums for sales taxes

---

6. Article 4 of the contract required that the work to be performed ". . . shall be commenced on or before July 15, 1974 in accord with a written 'Notice to Proceed' to the Contractor from the Owner, and completed fully within four hundred and sixty (460) consecutive calendar days after the date of commencement specified in said 'Notice to Proceed'."

paid and to be paid by them. The Board refused to increase the contract sum to cover the sales tax paid and payable to complete the work under the contract.

On 2 October 1975 Ruff instituted the declaratory judgment action against the Board. After Answer by the Board, Ruff moved for summary judgment. The court below granted the motion and on 19 April 1976 made its declaration of the rights of the parties. The doctrine of sovereign immunity was not considered.

Still with no consideration given to the doctrine of sovereign immunity, the Board urges that Ruff was not entitled to summary judgment because there was a dispute as to a material fact. Implicit in the grant of the motion for summary judgment is that the trial court summarily determined, as it may, that there was no *bona fide* issue between the parties. In the frame of reference of the court's consideration, we are in accord with this determination. The facts material to the controversy as presented were that the contract between the parties contained a provision that materials purchased to perform the work called for were to be exempt from sales tax. Ruff and its subcontractors, however, were obliged to pay sales tax on those materials. The pleadings and depositions on file and the affidavits submitted by Ruff as the moving party, set forth competent evidence to show these facts. The Board did not present evidence which was sufficient to dispute them. *Lynx, Inc. v. Ordnance Products*, 273 Md. 1, 327 A. 2d 502 (1974); *Melbourne v. Griffith*, 263 Md. 486, 283 A. 2d 363 (1971).

On the undisputed facts Ruff was entitled to summary judgment as a matter of law. Maryland Rule 610 d 1. As we see it, the controversy is simply determined. The clear import of Specification 1.24 was that in bidding on the job no Maryland sales tax need be considered and Ruff presented his bid accordingly. When his bid was accepted, Specification 1.24 was made a provision of the ensuing contract. In other words, the agreement called for Ruff to perform certain work for the Board at a stipulated sum, arrived at by Ruff and accepted by the Board, on the Board's assurance, written into the contract, that no sales tax would

be payable by Ruff on materials purchased to perform the work. *See Kandalis v. Paul Pet Constr. Co.*, 210 Md. 319, 323, 123 A. 2d 345, 347 (1956); *Gaybis v. Palm*, 201 Md. 78, 81, 93 A. 2d 269, 270 (1952). The charge on Ruff to pay sales tax on such materials breached the contract. *See Weiss v. Sheet Metal Fabricators*, 206 Md. 195, 203, 110 A. 2d 671, 675 (1955). Ruff was entitled to damages payable by the Board in the amount of the sales tax paid by Ruff to the State or to its subcontractors for the sales tax they were obliged to pay on such materials. Whether there was a mistake of law or fact and whether Ruff was entitled to rely on a misrepresentation of the law are not issues here. There was not a common assumption that no sales tax was payable. There was a positive declaration by the Board that no sales tax was payable. *Cf. Hammaker v. Schleigh*, 157 Md. 652, 663, 147 A. 790, 794 (1929). All that was involved was a breach of an unambiguous provision of a contract, entitling the injured party to damages flowing from that breach. The holding of the judge below in determining the rights of Ruff and the Board under their contract, reached this result. The judge properly declared that the Board ". . . shall reimburse [Ruff] for all sales tax due and to become due for all materials purchased in furtherance of the contract between the parties, including all materials purchased by subcontractors engaged in said project."

IV

The entire controversy here has been narrowed to the one issue whether funds are in fact available to the Board in an amount sufficient to satisfy a money judgment for the sales tax, interest and penalties, paid and payable in the construction of the facility under the contract. If funds are available, the waiver of sovereign immunity is complete, and an action for a money judgment for breach of the contract would lie. On the other hand, if funds are not available, such action would be precluded by the application of the doctrine of sovereign immunity.

As we are not able to resolve the issue on the record before

us, we remand the case under Rule 871 a for further proceedings as if no appeal had been taken and the judgment from which the appeal was taken had not been entered. *See Leatherman v. Long,* 266 Md. 654, 296 A. 2d 382 (1972). The trial court shall conduct further proceedings by the introduction of additional evidence, or otherwise, as may be necessary to determine the amount of sales tax, penalties and interest, paid and payable in performance of the contract between the Board and Ruff and to ascertain whether funds are available to the Board to satisfy the amount found to be due. The court shall amend its declaratory order as required by its findings. Our opinion is conclusive as to all points finally decided thereby.

> *Case remanded for further proceedings in accordance with this opinion; costs to abide the result below.*