545 A.A2d 1312

**Evelyn KEE, Pers. Rep. of the Estate of
Mark Schaffert et al.**

v.

**STATE HIGHWAY ADMINISTRATION et al.**

No. 152, Sept. Term, 1987.

Court of Appeals of Maryland.

Aug. 26, 1988.

446

Paul Victor Jorgensen, Middletown, for appellants.

Hugh G. Stevenson, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Ralph S. Tyler, III, Carolyn A. Quattrocki, Asst. Attys. Gen., on brief), Baltimore, for appellees.

Argued Before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ELDRIDGE, Judge.

This case involves a question of coverage under the Maryland Tort Claims Act, Maryland Code (1984, 1987 Cum. Supp.), § 12–101 through § 12–110 of the State Government Article, formerly codified in Code (1974, 1980 Repl.Vol., 1983 Cum.Supp.), § 5–401 through § 5–408 of the Courts and Judicial Proceedings Article.[1]

### I.

Before setting forth the facts of the case and the parties' contentions, we briefly review the relevant statutory provisions and legislative background.

Effective July 1, 1982, the General Assembly enacted the Maryland Tort Claims Act, waiving the tort immunity of the State under specified conditions. Ch. 298 of the Acts of 1981, Code (1980 Repl.Vol., 1983 Cum.Supp.), §§ 5–401 through 5–408 of the Courts and Judicial Proceedings Article. Section 5–403 of the Courts and Judicial Proceedings Article set forth the scope of the waiver. Subsection (a) of that section provided as follows:

"(a) *Actions in which State's immunity is waived.*—Except as provided in subsection (b) of this section, the immunity of the State from suit in the courts of this State and liability in tort is waived in the following actions to the extent and in the amount that the State is covered by a program of insurance established by the Treasurer pursuant to § 27 of Article 95.

---

1. In 1984, the Maryland Tort Claims Act was moved from Title 5, Subtitle 4, of the Courts and Judicial Proceedings Article, to the State Government Article of the Code. Because the accident in this case occurred on September 24, 1982, all references to the Tort Claims Act in this opinion are to Title 5, Subtitle 4, of the Courts and Judicial Proceedings Article.

(1) An action to recover damages caused by the negligent maintenance or operation of a motor vehicle by a State employee;

(2) An action to recover damages caused by the negligence of a health care employee of a State facility or institution or by a doctor, nurse, dentist, or related health care personnel employed by the State;

(3) An action to recover damages caused by the patently dangerous condition of a building, structure, or other public improvement owned and controlled by the State;

(4) An action to recover damages caused by the negligent use or maintenance of State property by a State employee;

(5) an action to recover damages caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk, or highway owned and controlled by the State if constructive or actual notice of the condition existed; and

(6) An action to recover damages caused by the negligent failure of a State employee to properly supervise an activity at a State park or recreation facility."

As the introductory language in subsection (a) makes clear, the General Assembly waived the State's immunity only "to the extent and in the amount that the State is covered by a program of insurance established by the Treasurer pursuant to § 27 of Article 95." Code (1979 Repl.Vol., 1984 Cum.Supp.), Art. 95, § 27(d), provided that "[t]o the extent that funds are available in the budget, the Treasurer shall provide self-insurance or purchased insurance or a combination of [both] . . . sufficient to cover the liability of the State and its employees under Subtitle 4 of Title 5 of the Courts Article of this Code."

█ For the first year of the Tort Claims Act, the fiscal year beginning July 1, 1982, and ending June 30, 1983, the General Assembly appropriated $2,836,500 to the State Treasurer for the purchase of insurance generally. The budget bill, as submitted by the Governor and as enacted by the General Assembly, stated (Ch. 125 of the Acts of 1982, at 1383):

"not more than $1,000,000 of this appropriation shall be utilized to purchase commercial insurance for the purpose of a limited waiver of sovereign immunity for tort claims under the provisions of section 5–403(a)(3)(4) of the Courts and Judicial Proceedings Article ... and that no other portion of this appropriation may be expended for insurance under Section 27(d) of Article 95."

Thus the Treasurer had $1,000,000 with which to purchase an insurance policy covering claims made under paragraphs (3) and (4) of § 5–403(a).[2] Using this appropriation, the State Treasurer purchased an insurance policy with Reliance of Illinois for $613,951. In accordance with the statutory authorization, the policy apparently covered only claims made under paragraphs (3) and (4) of § 5–403(a).[3] The policy was in effect from July 1, 1982, through November 1, 1983, covering occurrences within that period.

In subsequent fiscal years, the General Assembly appropriated funds for the purchase of commercial insurance for the Tort Claims Act generally, and did not limit the authorization to any particular categories of actions for which

2. The State Budget detailed the estimated purchases of insurance for the fiscal year ending June 30, 1983. These purchases included: 1) fire insurance, $632,500; 2) specific coverage, $1,675,000; 3) property loss, $250,000; 4) liability losses, $750,000; 5) Tort Claims Act, $1,000,000. Including agency reimbursements of $1,471,000, these estimated purchases totalled $2,836,500, the total amount appropriated by the General Assembly for that fiscal year.

3. Compare the statement made by the Court of Special Appeals in *Kee v. State Highway Admin.*, 68 Md.App. 473, 489, 513 A.2d 930, 938 (1986), *vacated,* 309 Md. 523, 525 A.2d 637 (1987). Although the Court of Special Appeals quoted this same provision of the 1982–1983 budget act, 68 Md.App. at 484, 513 A.2d at 935, the intermediate appellate court somehow concluded that, because the budget act did not specify the portion of the insurance appropriation which could be spent on coverage for § 5–403(a)(5), the State Treasurer had authority to purchase insurance to cover claims made under that provision. We disagree. The 1982–1983 budget act clearly authorized purchase of insurance coverage only for §§ 5–403(a)(3) and (4). Except for paragraphs (3) and (4), it specifically prohibited using any part of the insurance appropriation for insurance under Art. 95, § 27(d), which contained the authority for the Treasurer to provide insurance to cover Tort Claims Act liability.

immunity was waived.[4] Moreover, by Ch. 538 of the Acts of 1985, the General Assembly repealed the provisions listing specified categories for which immunity was waived and adopted entirely different language describing the scope of the immunity waiver. *See Clea v. City of Baltimore*, 312 Md. 662, 671 n. 6, 541 A.2d 1303, 1307 n. 6 (1988).

In 1985, the General Assembly authorized payment of claims not covered by commercial insurance from the State Insurance Trust Fund (self-insurance), and appropriated funds for that purpose. *See* Ch. 538 of the Acts of 1985, at 2685; Ch. 109 of the Acts of 1986, at 360.[5] These provisions became effective July 1, 1985, and on July 17, 1985, the Treasurer promulgated an emergency regulation authorizing payment of claims from the self-insurance fund. *See* COMAR 25.02.01.01 (1986).[6]

## II.

Turning to the facts of the instant case, Mark Schaffert was driving an automobile, in which Gary Schaffert was a passenger, on the Old National Pike highway in Frederick County, Maryland, on September 24, 1982. Mark Schaffert swerved to avoid another vehicle, went through a guardrail, and slid down an embankment. The accident resulted in the

---

4. By Ch. 63 of the Acts of 1983, at 262, the General Assembly appropriated a total of $3,294,000 for the purchase of insurance of which "not more than $1,300,000 ... shall be utilized to purchase commercial insurance for the [Tort Claims Act] ... and ... no other portion of this appropriation may be expended for insurance under Section 27(d) of Article 95." *See also* Ch. 81 of the Acts of 1984, at 159; Ch. 106 of the Acts of 1985, at 1274.

5. The 1986 budget bill stated that "$2,280,717 of this appropriation shall be utilized for self-insurance coverage and claims servicing under the State Insurance Trust Fund for the purpose of a limited waiver of sovereign immunity for tort claims under the provision of the Maryland Tort Claims Act (Chapter 538 of the Laws of 1985)." Ch. 109 of the Acts of 1986, at 360. *See also* Ch. 121 of the Acts of 1987, at 585.

6. This regulation was adopted permanently effective November 4, 1985.

death of Mark Schaffert and in serious injury to Gary Schaffert.

Gary Schaffert and Evelyn Kee, the mother of Mark and Gary Schaffert, in her·own capacity and as personal representative of Mark Schaffert's estate, sought to recover for these injuries from the State under the recently enacted Maryland Tort Claims Act. In accordance with the provisions of the Tort Claims Act, they initially presented their claim for damages to the State Treasurer. *See* § 5–406. Their claim alleged that the injuries occurred as a result of a negligently maintained guardrail that could not withstand the impact of the vehicle, thus allowing the vehicle to flip over and slide down the embankment. The claim also alleged that the State had knowledge of the guardrail's dangerous condition.

On August 21, 1985, the Treasurer denied the claim, concluding that the State had not waived its immunity under the Tort Claims Act for this type of claim in 1982.

On September 25, 1985, Gary Schaffert and Evelyn Kee filed the present action in the Circuit Court for Frederick County. The State Highway Administration, the State of Maryland, and a third party, Green Acres, Inc., were named as defendants. The complaint set out the detailed facts of the accident, the allegations concerning the negligent maintenance of the guardrail by the State Highway Administration, and the fact that their claim had been presented to and denied by the State Treasurer. The complaint made no reference to any particular paragraphs of § 5–403(a) or any of the waiver categories listed in that section.

In January 1986, the state defendants filed a motion for summary judgment contending that both the State and the State Highway Administration retained their immunity from suit because the State was not covered by a program of insurance for this type of accident. The state defendants asserted that the plaintiffs' claim fell within paragraph (5) of § 5–403(a), relating to damages caused by a defective, unsafe, or dangerous condition of a state highway. The

state defendants then pointed out that in 1982, pursuant to legislative directive, insurance coverage had only been purchased to cover claims made under paragraphs (3) and (4) of § 5–403(a). Attached to the motion for summary judgment was a brief affidavit by the "Insurance Manager for the State Treasurer," stating that there was no insurance "to cover an action to recover damages caused by a defective, unsafe, or dangerous conditions of any street, alley, sidewalk or highway owned and controlled by the State between July 1, 1982 and November 1, 1983."

The circuit court granted the state defendants' motion for summary judgment, thereby purporting to dispose of the claim against the state defendants. The court's order did not, however, dispose of the claim against Green Acres, Inc., nor did the court certify the judgment in favor of the state defendants as final pursuant to Maryland Rule 2–602.[7]

The plaintiffs appealed the circuit court's decision to the Court of Special Appeals. *See Kee et al. v. State Highway Administration et al.,* 68 Md.App. 473, 513 A.2d 930 (1986). The Court of Special Appeals appeared to accept the state defendants' contention that the plaintiffs' claim fell only within paragraph (5) of § 5–403(a), and the court pointed

---

7. Md. Rule 2–602 provides:
   "(a) **Generally.**—Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action ... or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
   (1) is not a final judgment;
   (2) does not terminate the action as to any of the claims or any of the parties; and
   (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.
   (b) **When Allowed.**—If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
   (1) as to one or more but fewer than all of the claims or parties; or
   (2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only."

out that the insurance policy in effect in 1982 excluded such a claim. Nevertheless, the intermediate appellate court reversed, holding that, under the statutory scheme, the State Treasurer had a duty to purchase insurance to cover all of the various categories under the Tort Claims Act, and that the Treasurer could not decide to insure certain causes of action to the exclusion of others. 68 Md.App. at 488–490, 513 A.2d at 937–939. Because, according to the Court of Special Appeals, the record did not indicate whether funds were available to purchase insurance to cover claims under paragraph (5) of § 5–403(a), and what the cost of this insurance would be, the court concluded that summary judgment was improper.[8]

One week after the filing of the Court of Special Appeals' opinion, the plaintiffs filed in the circuit court an amended complaint which, *inter alia,* expressly asserted that the action fell within paragraphs (3) and (4) of § 5–403(a). The state defendants then filed in this Court a petition for a writ of certiorari, seeking review of the Court of Special Appeals' decision.

We granted the petition and issued a writ of certiorari. We did not, however, reach the merits of the case. Instead, we vacated the judgment of the Court of Special Appeals and remanded the case to that court with directions to dismiss the appeal for lack of a final trial court judgment. *State Highway Admin. v. Kee,* 309 Md. 523, 529–530, 525 A.2d 637, 640 (1987). We pointed out that, because the claim against Green Acres, Inc., had not been disposed of, and because the judgment for the state defendants had not been certified as final under Rule 2–602, no final circuit court judgment existed as to any of the defendants.

Thereafter, the state defendants filed a motion in the circuit court for certification of a final judgment pursuant to Rule 2–602(b). At the same time, in a separate memorandum, the state defendants requested that the court strike

---

8. *See* note 3, *supra.*

the plaintiffs' amended complaint. The request did not address the merits of the plaintiffs' contentions regarding paragraphs (3) and (4) of § 5–403(a); instead, the state defendants took the position that the circuit court's prior "entry of summary judgment on behalf of the state defendants ... is still valid, and plaintiffs' amended complaint, which would bring the State back into a suit from which it has already been dismissed, should not be permitted." The circuit court, without stating its reasons, entered an order granting the defendants' motion for certification, certifying a final judgment in favor of the state defendants in accordance with Rule 2–602, and striking the amended complaint "against the" state defendants.

Plaintiffs then appealed to the Court of Special Appeals. Before any further proceedings in the Court of Special Appeals, the state defendants petitioned this Court for a writ of certiorari. The plaintiffs filed a cross-petition for a writ of certiorari in which they specifically contended, *inter alia,* that their action fell within paragraphs (3) or (4) of § 5–403(a) of the Tort Claims Act. We granted both petitions.

### III.

A waiver of sovereign or governmental immunity from suit generally requires that two conditions be met. First, the Legislature must authorize suits for damages, and second, there must be provision for the payment of judgments. *See, generally, e.g., Md.–Nat'l Cap. P. & P. Comm'n v. Kranz,* 308 Md. 618, 623–626, 521 A.2d 729, 732–733 (1987); *Jackson v. Housing Opp. Comm'n,* 289 Md. 118, 123, 422 A.2d 376, 378–379 (1980); *Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 508–509, 397 A.2d 1027, 1030 (1979); *Board v. John K. Ruff, Inc.,* 278 Md. 580, 595, 366 A.2d 360, 363 (1976); *American Structures v. City of Balto.,* 278 Md. 356, 359, 364 A.2d 55, 56–57 (1976), and cases there cited; *Lohr v. River Commission,* 180 Md. 584, 26 A.2d 547 (1942); *University of Maryland v. Maas,* 173 Md. 554, 558–559, 197 A. 123, 125 (1937); *Fisher &*

*Carozza Co. v. Mackall,* 138 Md. 586, 593–594, 114 A. 580, 583 (1921); *State v. Rich,* 126 Md. 643, 646–648, 95 A. 956, 957–958 (1915); *Weddle v. School Commissioners,* 94 Md. 334, 344–345, 51 A. 289, 291 (1902).

In the case at bar, the plaintiffs make two alternate arguments as to why there was a waiver of immunity with regard to their action.

██ The plaintiffs' first argument assumes that para-° graph (5) of § 5–403(a) constitutes the sole basis for their action, and that the Reliance insurance policy in effect during 1982 excluded claims under paragraph (5). Nevertheless, the plaintiffs contend that whether the State had waived its immunity by providing for funds to pay claims should be judged by the funds available at the time of judgment rather than at the time the accident occurred. Consequently, the plaintiffs assert, the State's self-insurance program, established in 1985, covers the accident, and therefore the action is not barred by sovereign immunity.

The plaintiffs' alternatively argue that their claim falls within either paragraph (3) or paragraph (4) of § 5–403(a). They point out that both of these paragraphs embrace categories of claims covered by the Reliance insurance policy in effect during 1982.

### A.

The plaintiffs' first argument rests upon the premise that a consent to suit coupled with a provision for payment of claims is sufficient to waive the State's immunity from tort suit even if, at the time the cause of action arose, funds were not yet available to pay the judgment. Under these circumstances, according to the plaintiffs, the waiver of immunity is sufficient as long as funds are appropriated and available by the time judgment is entered. As a general matter, and under statutory language different from that applicable to this case, there may be merit in this theory. Nevertheless, under the circumstances here, the plaintiffs' argument must be rejected.

In 1982, when the accident in this case occurred, the General Assembly and the Governor did not choose to fund the entire Tort Claims Act. Instead, the 1982–1983 budget bill, as submitted by the Governor and enacted by the General Assembly, only authorized the State Treasurer to purchase insurance to cover claims under paragraphs (3) and (4) of § 5–403(a). As stated earlier, under the Tort Claims Act, the State waived its immunity only to the extent that the State was covered by an insurance program. § 5–403(a). Moreover, the Treasurer was only authorized to provide insurance "[t]o the extent that funds are available in the budget." Art. 95, § 27(d).

This limited provision for funding of the Tort Claims Act indicates a clear intent on the part of the Chief Executive and General Assembly to provide only a limited waiver of the State's immunity in the first year of the Tort Claims Act. Moreover, the Budget Message from the Governor to the General Assembly (Annapolis, January 20, 1982) reinforces this view. The Message states: "The recommended budget also includes $1,000,000 as an initial phase of the implementation of the Maryland Tort Claims Act (Chapter 298 of the Acts of 1981)." Budget Message, at 66.

Consequently, in our view, the State had not waived its immunity from tort suit under paragraph (5) of § 5–403(a) in 1982 because the Treasurer had no authority to purchase insurance coverage and no ability to obtain funds to cover claims under that particular statutory paragraph. Under the clear language of the Tort Claims Act and the enacted budget bill, the state defendants retained their immunity for causes of action accruing in 1982 and falling only within § 5–403(a)(5), since there was no authority or provision for the payment of claims.

### B.

As previously discussed, the plaintiffs alternatively argue that their action fell within either paragraph (3) or paragraph (4) of § 5–403(a), and thus there was a waiver of immunity in effect at the time of the accident. Although

we shall not decide these issues at this time, we believe that there is sufficient merit in the plaintiffs' alternate argument to have precluded the granting of summary judgment.

Paragraph (3) of § 5–403(a) waives the State's tort immunity for an "action to recover damages caused by the patently dangerous condition of a building, structure, or other public improvement owned and controlled by the State." The plaintiffs' factual allegations, both in the original complaint and the amended complaint, were sufficient to assert a "patently dangerous condition" in the guardrail. Moreover, the allegations were sufficient to assert that the guardrail was a "structure or other public improvement owned and controlled by the State." Literally, the plaintiffs' action would seem to fall within paragraph (3).

Paragraph (4) of § 5–403(a) waives the State's immunity in tort for an "action to recover damages caused by the negligent use or maintenance of State property by a State employee." The plaintiffs, in both their original and amended complaint, certainly charged that the guardrail belonged to the State and that the employees of the State Highway Administration negligently maintained the guardrail. The Tort Claims Act, in § 5–401(e), provides that " 'State property' means any tangible property, real, personal, or mixed, which is owned by or in the possession of the State." Again, the plaintiffs' action would appear to fall within paragraph (4).

Even though the plaintiffs' action literally falls within paragraphs (3), (4) or (5), it might be argued that the General Assembly intended the categories to be mutually exclusive, and that paragraph (5) more specifically covers the instant case. Reliance might be placed upon the principle of statutory construction "that a specific statutory provision governs over a general one." *Lumbermen's Mut. Casualty v. Ins. Comm'r*, 302 Md. 248, 268, 487 A.2d 271, 281 (1985), and cases there cited. *See also Passnault v. Board of Admin. Appeals*, 309 Md. 466, 475, 525 A.2d 222, 226 (1987); *Farmers & Merchants Bank v. Schlossberg*, 306 Md. 48, 63, 507 A.2d 172, 180 (1986). There is a

problem with such an argument, however, particularly as applied to paragraph (4).

The Maryland Tort Claims Act was originally enacted as Ch. 298 of the Acts of 1981. The bill which became Ch. 298 was Senate Bill 585, which was reported favorably by the Senate Judicial Proceedings Committee. A detailed analysis of Senate Bill 585 was done by the Senate Judicial Proceedings Committee and is contained in the Department of Legislative Reference's file on the bill. The analysis indicates the legislative contemplation that paragraph (4) of § 5–403(a) was not distinct and separate, but rather that overlap between this category and other categories would exist. The Senate Committee's report expressly stated with regard to § 5–403(a)(4): "The waiver in this paragraph is the broadest of the six and therefore overlaps to some extent most of the others."

The state defendants offer no argument in this Court to rebut the plaintiffs' construction of paragraphs (3) and (4) of § 5–403(a). Instead, the state defendants' principal response to the plaintiffs' reliance on paragraphs (3) and (4) seems to be that the issue was not timely pleaded and argued in the trial court. The state defendants assert that the matter was not presented to the circuit court until the amended complaint after the Court of Special Appeals' remand, and that the amended complaint was appropriately struck by the trial court. The state defendants also claim that the plaintiffs consented to the striking of their amended complaint. Finally, the state defendants suggest that, even if the plaintiffs' action falls within paragraphs (3) and (4), it is still within an exclusion contained in the Reliance insurance policy.

In our view, it would be inappropriate to affirm the summary judgment on the grounds offered by the state defendants.

■ Preliminarily, it was not incumbent upon the plaintiffs to set forth specifically in their complaint the legal argument that their action fell within paragraphs (3) and (4)

of § 5–403(a). The factual allegations of the original complaint were sufficient to bring the action within those paragraphs, and generally this is all that the rules require. *See* Maryland Rules 2–303(b) and 2–305; P. Niemeyer and L. Richards, *Maryland Rules Commentary*, 131–132, 135 (1984). The absence of governmental immunity need not be pleaded by a plaintiff; rather, governmental immunity is a non-waivable defense, to be raised by a motion to dismiss, a motion for summary judgment, or any other pleading. *See* Rules 2–322(b) and 2–324(a).

■ Moreover, even if it were necessary for the plaintiffs in their complaint to rely specifically on paragraphs (3) and (4) of § 5–403(a), the amended complaint was timely filed. Contrary to the assertion by the state defendants, it was not filed after they were dismissed from the case. The circuit court's initial order purporting to dispose of the action against the state defendants failed to resolve the claim against Green Acres and was not certified as final in accordance with Rule 2–602. As expressly provided in Rule 2–602(a), such an order

"(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties."

Under the circumstances, Rule 2–341 entitled the plaintiffs to amend their complaint at the time they did, without consent of adverse parties and without leave of court.

■ There is utterly no merit in the state defendants' assertion that the plaintiffs consented to the striking of their amended complaint and abandoned their reliance on paragraphs (3) and (4) of § 5–403(a). It is true that the plaintiffs consented to the state defendants' motion that final judgment be certified in accordance with Rule 2–602. Nevertheless, this motion made absolutely no reference to the striking of the amended complaint. The state defend-

ants' request to strike the amended complaint was contained only in a separate memorandum, and, as far as the record shows, the plaintiffs at no time consented to this request.

From and after the time the amended complaint was filed, the plaintiffs have consistently argued in the circuit court and in this Court that their action was authorized by paragraphs (3) and (4) of § 5–403(a). Thus, they preserved the matter under former Rules 885 and 813.

The state defendants' final point is that the plaintiffs' claim, even if within paragraphs (3) or (4) of § 5–403(a), is excluded by the language of the Reliance insurance policy in effect at the time of the accident. The state defendants rely upon language in one of the endorsements to the policy excluding "[a]n action to recover damages caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk, or highway owned and controlled by the State if constructive or actual notice of the condition existed." As is apparent, however, the language of this exclusion is, word for word, identical to the language of paragraph (5) of § 5–403(a). The same is true of other exclusions contained in the same endorsement and in other endorsements; they precisely track the statutory language. Although we do not decide the issue, the portions of the policy contained in the record before us seem to reflect an intent to cover those actions that the General Assembly intended to be covered in 1982, and to exclude those actions which the General Assembly intended to exclude. In other words, the contractual intent appears to reflect entirely the legislative intent.

Under Maryland Rule 2–501(a), summary judgment is to be granted only if "there is no genuine dispute as to any material fact and the [moving] party is entitled to judgment as a matter of law." Under the circumstances, in light of the plaintiffs' reliance on paragraphs (3) and (4), we cannot conclude that the state defendants were entitled to judgment as a matter of law.

Nevertheless, as we have heretofore indicated, we do not now decide that the plaintiffs' action did fall within either paragraph (3) or paragraph (4) of § 5–403(a) and was covered by the Reliance insurance policy. The circuit court did not decide these matters, and, under former Rule 885, "[t]his court will not ordinarily decide any point or question which does not plainly appear by the record to have been ... decided by the circuit court...." The issues may not involve entirely questions of law, in light of the contentions concerning the parties' intent under the Reliance insurance policy. Furthermore, it is not clear that the entire policy, with all endorsements, is before us. All we decide at this time is that summary judgment in favor of the state defendants should not have been granted.

JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY VACATED, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. APPELLEES TO PAY COSTS.