549 A.2d 1171

**Melvin Edward GARDNER, Jr., et al.**

v.

**STATE of Maryland, et al.**

**No. 283, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Nov. 14, 1988.

238

Robert W. Guth (Phillips P. O'Shaughnessy, Sandbower, Gabler & O'Shaughnessy, P.A., Baltimore, and Joseph A. Miklasz, Glen Burnie, on the brief), for appellants.

Elena Langrill, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Evelyn O. Cannon, Asst. Atty. Gen., on the brief), Airport, for appellee, State of Md.

Benjamin R. Goertemiller, Susan M. Marzetta, and Semmes, Bowen & Semmes, on the brief, Baltimore, for appellee, Constitution State Ins. Co.

Francis J. Ford and Ford & O'Neill, on the brief, Rockville, for appellee, Planet Ins. Co.

Argued before MOYLAN, WILNER and KARWACKI, JJ.

WILNER, Judge.

This case involves a construction of the State Tort Claims Act, now codified in Md.State Gov't Code Ann., §§ 12–101—12–109.

Until 1981, the State jealously guarded its sovereign immunity against liability for tort. The Court of Appeals had repeatedly held that the State could not be sued for the tortious conduct of its agencies, instrumentalities, officials, or employees unless the Legislature (1) authorized such a suit and (2) provided the funds or enabled the agency sued to obtain the funds necessary to satisfy any resulting judgment. *See, for example, University of Maryland v. Maas,* 173 Md. 554, 197 A. 123 (1938). Except in some very limited circumstances, the General Assembly declined to do either of those things. *Board v. John K. Ruff, Inc.,* 278 Md. 580, 366 A.2d 360 (1976); *Austin v. City of Baltimore,* 286 Md. 51, 405 A.2d 255 (1979).

After several years of study and a few unsuccessful attempts,[1] however, the Legislature enacted 1981 Md.Laws, ch. 298—the Maryland Tort Claims Act—in which it provided a more general waiver of sovereign immunity against tort liability. Though more comprehensive than anything that had preceded it, this waiver, too, was a limited one; it applied only to certain categories of tort actions, it did not cover certain kinds and levels of damages, and it was subject to certain conditions. *See Kee v. State Highway Admin.,* 313 Md. 445, 545 A.2d 1312 (1988).

---

**1.** *See Report Of The Governor's Commission To Study Sovereign Immunity,* Nov., 1976; *Report Of The Governor's Commission To Study The Liability Of Public Employees,* Oct., 1978.

Over the years—indeed in nearly every session of the General Assembly since 1981—the Tort Claims Act has been amended in one fashion or another. One of the provisions that has remained substantively intact, however —though it too has been the subject of some tinkering and refinement—is the requirement that, before any tort action against the State could be instituted in court, the plaintiff must have submitted his or her claim to the State Treasurer and had that claim denied by the Treasurer. This appeal focuses principally upon that provision.

To put the issues now before us in a proper perspective, however, we need to consider all or parts of three sections of the Act—§§ 12–104, 12–106, and 12–107. In particular:

(1) Section 12–104(a) provides:

"Subject to the exclusions and limitations in this subtitle, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent of insurance coverage under Title 9 of the State Finance and Procurement Article."

(2) Section 12–106(b) provides:

"A claimant may not institute an action under this subtitle unless:

(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim;

(2) the Treasurer or designee denies the claim finally; and

(3) the action is filed within 1 year after the claim is denied finally or 3 years after the cause of action arises, whichever is later."

(3) Section 12–107(d) provides:

"A claim under this subtitle is denied finally:

(1) if, by certified mail, return receipt requested, under a postmark of the United States Postal Service, the Treasurer or designee sends the claimant, or the legal

representative or counsel for the claimant written notice of denial; or

(2) if the Treasurer or designee fails to give notice of a final decision within 6 months after the filing of the claim."

On June 30, 1986, ten families living in close proximity to Baltimore–Washington International Airport filed suit against the State of Maryland seeking money damages for injuries caused to them by low-flying aircraft using the airport, the operation of the airport in general, and noise and "repellant odors" from two public highways in their neighborhood.

In the "Common Operative Facts" part of their complaint, the plaintiffs alleged, among other things, that (1) air traffic using the airport had increased dramatically since the airport was first built in the 1940's, (2) planes flew directly over the plaintiffs' homes "round the clock" at altitudes of under 300 feet, (3) those flights, the routing for which the State bears responsibility, represented a "deliberate (and/or negligent) choice to interfere with plaintiffs['] ... enjoyment of their real property," (4) in addition, the noise and repellant odors from the use of Routes 3 and 100, which surround the neighborhood, in combination with the activities at the airport, "have wrecked [sic] particular havoc upon plaintiffs," (5) the interference "could have been reduced or eliminated by the defendant's taking of reasonable steps, such as condemnation proceedings, which steps the defendant did not do and continue[s] to refuse to do," and (6) the noise, vibration, glare of aircraft lights, and repellant odors "have made it impossible for plaintiffs to live a normal life and to use and enjoy their properties."

Upon these factual allegations, the plaintiffs attempted to plead three causes of action. They charged the State with maintaining a nuisance (Count I), negligence in the use and maintenance of the State-owned airport (Count II), and creation and maintenance of a "patently dangerous public improvement" (Count III). Money damages aggregating

$38 million ($1 million for each family member joined as a plaintiff) were sought.

There is some dispute as to whether the plaintiffs had submitted a claim with the State Treasurer pursuant to § 12–106(b) prior to filing their action in court. The Treasurer's office, through an affidavit of the Insurance Manager, maintained that a claim was not "filed" until July 16, 1986, and that, as of September 5, 1986 (the date of the affidavit), it was still under review by the Treasurer. A secretary for plaintiffs' counsel filed a counter-affidavit, however, stating that she mailed the claim to the Treasurer's office on June 24, 1986, and that she "firmly believe[d]" that the Treasurer received it on June 25. In the context in which the case reaches us, this dispute is not important; the trial court, considering the matter for purposes of a motion to dismiss the complaint, gave the plaintiffs the benefit of the doubt, and so shall we.[2] Whenever the claim was received by or "submitted to" the Treasurer, it is undisputed that the Treasurer had not acted upon, and certainly had not "finally denied," the claim prior to the filing of the complaint. There was no assertion in the complaint that a claim had even been submitted, much less finally denied.

The State moved to dismiss the complaint, in part based on improper venue and in part for failure to comply with § 12–106(b). The plaintiffs responded to this second defense by contending that they were not obliged to comply with § 12–106(b). Count I, they asserted, is based on the guarantee in the Md. Declaration of Rights "against the

---

**2.** Section 12–106(b), as noted, requires the claimant to "submit" the claim to the Treasurer. The operative word, then, is "submit"—more precisely, "submits"—rather than "file." If the statute required that the claim be "filed," the Treasurer would seem to have the better of the argument, for "[a] paper is said to be 'filed' when it is delivered to the proper officer and received by him to be kept on file." *Levy v. Glens Falls Indemn. Co.,* 210 Md. 265, 273, 123 A.2d 348 (1956); *see also Cherry v. Brothers,* 306 Md. 84, 92, 507 A.2d 613 (1986), and *American Cas. v. Dept. Licens. & Reg.,* 52 Md.App. 157, 162, 447 A.2d 484 (1982) (quoting *Levy* ). Whether, in context, "submits" means the same as "files," and thus requires actual delivery, is an issue we need not decide in this case.

unconstitutional taking of their property" and that sovereign immunity is no bar to such a claim. Moreover, because "the State denied [a] petition to the State Treasurer" in another case, plaintiffs claimed that "there is no logical reason to expect a favorable action by the State Treasurer" on their claim.

The court agreed with the State that venue in Baltimore City was inappropriate and therefore transferred the case to Anne Arundel County. *See* Md.Rule 2–327(b). The more significant defense of failure to comply with § 12–106 was left to the receiving court to resolve.[3]

On March 11, 1987, before any further action was taken on the State's motion, the plaintiffs filed an "Amended Complaint By Interlineation," in which they added to their complaint this additional averment:

"This action arises under the Maryland Declaration of Rights, the Maryland Tort Claims Act, Sections 12–101 to 12–109 of the State Government Article of the Maryland Code, and under the common law. Plaintiffs have heretofore complied with all procedural requirements of the Maryland Tort Claims Act, in that no later than July 16, 1986, the State Treasurer received plaintiffs' statement of claim and that more than 7½ months later the State Treasurer has not responded to it, so that, by operation of law, he is deemed to have denied same."

The State moved to strike the amended complaint "in the interest of justice." The fear seemed to be that, if the amended complaint were allowed, it would "relate back to

---

**3.** The order of the Circuit Court for Baltimore City stated:

"Motion To Dismiss as to venue is GRANTED, and the matter is transferred to the Circuit Court for Anne Arundel County for purposes of trial.

The Motion To Dismiss or in the Alternative, For Summary Judgment raised on other grounds is continued for further action by the Circuit Court for Anne Arundel County."

At one point, the State argued that the effect of the first paragraph of the Order was an actual dismissal of the complaint. Wisely, it has not pursued that argument on appeal. The clear import and intent of the order was simply to transfer the case, as the Rule allows.

the original Complaint." In that event, the action would be deemed filed June 30, 1986—one day before the law imposing a "cap" of $350,000 on non-economic damages (1986 Md.Laws, ch. 639) took effect. The State seemed to have no objection to the plaintiffs' filing a new complaint, now that the prerequisite of the Tort Claims Act had been satisfied, but argued that it was impermissible and unfair to allow the plaintiffs to proceed by way of amending the initial complaint.

The court granted the State's motion and dismissed the amended complaint. It rejected the argument that Count I was not a tort claim subject to the Tort Claims Act, noting that (1) Count I alleged a nuisance, not an inverse condemnation, (2) the plaintiffs had filed a separate action in Federal court clearly premised on an unconstitutional taking of their property and thus knew how to allege such a cause of action, and (3) the claim they filed with the Treasurer "indicates that they intended the instant action as a tort action rather than a constitutionally-based action requiring no such claim filing." [4] The court concluded that the statutory prerequisite—final denial of a claim by the Treasurer—had not been satisfied when the initial complaint was filed and that that failure could not be overcome by an amended complaint. In that regard, the court held:

"Plaintiffs sought to remedy their error by filing an Amended Complaint by Interlineation in which they maintain that subsequent compliance with the procedural requirements of the Tort Claims Act is sufficient to restore their premature claim. The argument that their Amended Complaint should relate back to the date of the original filing would render the requirements for institution of a claim under the Tort Claims Act meaningless, in that subsequent compliance could always be utilized to a defective claim. The General Assembly specifically limited

---

**4.** Whether the trial court's holding or assumption that a "constitutionally-based action" is not subject to the Tort Claims Act is correct is not an issue in this appeal, and we therefore express no opinion on it.

any waiver of sovereign immunity to situations when prescribed procedures have been satisfied, namely, the final denial of a claim submitted with the Treasurer." (Footnote omitted.)

In sharp contrast to the initial argument they made below—that they were not obliged to comply with § 12–106(b)—appellants now acknowledge that compliance with that section *is* a prerequisite to the institution of an action in court. Indeed, they insist that compliance was a *jurisdictional* prerequisite—that the court had no authority to entertain their complaint or act on it in any affirmative way unless and until the Treasurer finally denied their claim. Their argument now, which is patently inconsistent with the theory upon which it rests, is that "[t]he Circuit Court, had nothing else happened, should have retained jurisdiction over the original Complaint during the pendency of the State Treasurer's review. Once that office's denial by silence occurred, the Circuit Court should have allowed the amendment to the Complaint as jurisdiction now plainly existed."

The new argument proceeds thusly: (1) § 12–106(b) represents, in essence, an administrative remedy that must be complied with before a party can resort to court; (2) although, normally, failure to exhaust an available administrative remedy is grounds for dismissal of the premature action, here appellants had partly complied by filing a claim with the Treasurer; (3) under that circumstance, the court —though, as they say, was without jurisdiction—should have simply "sat on" the complaint until the Treasurer either acted on the claim or effectively denied it through inaction; and (4) at that point, appellants were entitled to amend the defective complaint to allege satisfaction of the jurisdictional prerequisite and have it treated as though the action was properly instituted when the original complaint was filed. The whole point of this argument, of course, is to give appellants the benefit of the "relation back" doctrine and thus escape any suggestion that the limitations on recovery embodied in 1986 Md.Laws, ch. 639 (Md.Cts. &

Jud.Proc.Code Ann., §§ 11–108 and 11–109) would apply to their case.

We shall hand appellants a technical victory, although, under our view of the matter, it will avail them naught in terms of what is of real importance to them. We believe that the trial court should have allowed appellants to amend their complaint (or, as they sought to do in this case, to file an amended complaint) to allege compliance with § 12–106(b), but, in light of the legislative intent behind the requirement of that section, we do not believe that appellants would be entitled to any "relation back" as a result of the amendment. Their action should be treated as though it were filed on the date they filed their amended complaint. How that will or might affect the application of ch. 639 is not a matter we need consider in this appeal.

█ It is evident from the statute itself and, to a certain extent, from its legislative history, that the Maryland Tort Claims Act was patterned upon the Federal counterpart, 28 U.S.C. §§ 2671—2680. Both statutes provide for a *conditional* waiver of the government's common law sovereign immunity against tort liability, the principal condition being that the plaintiff's claim be first presented, or submitted, to a designated administrative official or agency for consideration, and that no court action against the government be allowed until the claim has been denied by that official or agency. The analogous Federal provision is set forth in 28 U.S.C. § 2675(a), as follows:

"An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of

the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim."

Because the provisions are so similar and because the common intent behind them is so clear, we may and should be guided by the case law interpretation of the Federal statute when we examine the State analog, § 12–106(b). *See Faulk v. State's Attorney for Harford Co.*, 299 Md. 493, 506, 474 A.2d 880 (1984): "Where the purpose and language of a federal statute are substantially the same as that of a later state statute, interpretations of the federal statute are ordinarily persuasive."

The Federal experience may be summarized as follows:

(1) The requirement of 28 U.S.C. § 2675(a) is generally regarded as a jurisdictional prerequisite to filing an action in court. If a plaintiff fails to comply with the requirement, the action must be dismissed; there is no discretion to waive compliance or excuse non-compliance. *See Henderson v. United States*, 785 F.2d 121 (4th Cir.1986); *U.S. v. Burzynski Cancer Research Institute*, 819 F.2d 1301 (5th Cir.1987), *cert. denied* —— U.S. ——, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988); *Best Bearings Co. v. United States*, 463 F.2d 1177 (7th Cir.1972); *Melo v. United States*, 505 F.2d 1026 (8th Cir.1974); *Three–M Enterprises, Inc. v. United States*, 548 F.2d 293 (10th Cir.1977); *Lykins v. Pointer, Inc.*, 725 F.2d 645 (11th Cir.1984). Most State courts have interpreted their counterpart tort claims acts the same way. *See, for example, Dassinger v. Oden*, 124 Ariz. 551, 606 P.2d 41 (Ariz.App.1979); *Lloyd v. State Personnel Bd. of State of Colo.*, 710 P.2d 1177 (Colo.App. 1985), *rev'd on other grounds* 752 P.2d 559 (Colo.1988); *West v. Wainwright*, 380 So.2d 1338 (Fla.App.1980); *Indiana State Highway Com'n v. Morris*, 488 N.E.2d 713 (Ind.App.1986); *Fearon v. Commonwealth*, 394 Mass. 50, 474 N.E.2d 162 (1985); *Luciano v. Fanberg Realty Co.*, 102 A.D.2d 94, 475 N.Y.S.2d 854 (1984); *Ibrahim v. Samore*,

118 Wis.2d 720, 348 N.W.2d 554 (1984); *but compare Naylor v. Minnesota Daily*, 342 N.W.2d 632 (Minn.1984).

(2) Where the plaintiff has made a claim with the appropriate agency but filed a court action before the claim was denied or the six-month period for agency consideration has run, and the court considers a government motion to dismiss the action before that six-month period has expired, the court will dismiss the action and not simply hold it in abeyance until expiration of the period. At least two theories have been used to justify that result. In *Fuller v. Daniel*, 438 F.Supp. 928, 930 (N.D.Ala.1977), the Court held: "Since it appears that the Court lacks jurisdiction, the action must be dismissed immediately. The Court cannot hold the matter in abeyance pending prosecution of the administrative remedy, because where the Court does not *have* jurisdiction, it cannot *retain* jurisdiction." (Emphasis added.) *See also U.S. v. Burzynski Cancer Research Center, supra*, 819 F.2d 1301.

In *Gregory v. Mitchell*, 634 F.2d 199, 204 (5th Cir.1981), the Fifth Circuit Court of Appeals offered this alternative explanation:

"[T]o allow the district court to stay or hold in abeyance the damage claim against the FDIC until the six month period accrues would tend to increase the congestion in our already heavily burdened district courts. Instead of promoting congressional intent in enacting 28 U.S.C. § 2675 by 'making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States,' .... appellants' theory would spur unnecessary litigation and slow down the process."

(3) In those instances where the court action was prematurely filed but, before the court rules on the motion to dismiss, the jurisdictional prerequisite has become satisfied in that a proper claim has been made and denied (either affirmatively or by operation of law), the plaintiff is generally allowed to amend the complaint to recite satisfaction of the prerequisite, at least where the claim is denied "before any substantial progress has been made in the pending

litigation." *Kubrick v. United States,* 581 F.2d 1092, 1098 (3d Cir.1978), *rev'd on other grounds* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *see also Celestine v. Veterans Admin. Hosp.,* 746 F.2d 1360 (8th Cir.1984); *Campbell v. United States,* 534 F.Supp. 762 (D.Haw.1982). The rationale for that approach is that "[t]o hold that refiling was necessary would involve duplicitous pleadings and wasted effort." *Kubrick,* 581 F.2d at 1098.

(4) At least two caveats, relevant to the circumstances of this case, have been expressed to this view.

In none of the cases allowing the plaintiff to amend his complaint has there been any indication of a change in the law or other event prejudicial to the government occurring during the interval between the initial premature filing of the complaint and the satisfaction of the jurisdictional prerequisite. Thus, there has generally been no consideration given to the "relation back" doctrine; whether the action related back or did not relate back was irrelevant. In the absence of any special reason *not* to allow the amendment, the courts simply found no purpose in requiring the filing of a new action. In one case, however, even in the absence of any special intervening event, the court made clear that the amendment should be allowed "without relation back" to the date the initial, premature claim was filed. *Morano v. U.S. Naval Hospital,* 437 F.2d 1009, 1011 (3d Cir.1971).

The second caveat was expressed in *Insurance Co. of North America v. United States,* 561 F.Supp. 106 (E.D.Pa. 1983). The plaintiff there filed its action in court three days after presenting its claim to the agency, provoking the court to declare, at 118:

"At the time of trial, more than six months had elapsed from the date of filing the administrative complaint without any final decision. Although in some cases the jurisdictional defect has been considered cured where the six-month period has elapsed prior to any substantial

progress in the litigation, ... the court does not believe this should be the case here where the filing of the lawsuit within three days of submitting the administrative claim *can only be considered a deliberate flouting of the requirement that an agency have six months free of litigation to attempt to resolve the matter.* Plaintiff's claim against the U.S. must be dismissed."

(Citations and footnote omitted; emphasis added.)

As we have indicated, appellants now concede that their initial complaint was premature and that the prematurity constitutes a jurisdictional defect. It is clear from the record, and indeed not disputed by appellants, that the premature filing was deliberate. The complaint was filed on June 30, 1986, in order to "slip it in" before the July 1, 1986 effective date of the 1986 Md.Laws, ch. 639. Under these circumstances, we reject as utterly improper the notions that (1) the court was obliged to hold the State's motion to dismiss in abeyance until the Treasurer denied the claim, by action or inaction, and (2) if allowed to amend their complaint once the claim was effectively denied, they should receive the benefit of a "relation back."

We think the approach of the Third Circuit Court of Appeals in *Morano v. U.S. Naval Hospital, supra,* 437 F.2d 1009, is the best one in this setting, i.e., to allow the amendment rather than requiring a refiling, but to treat the case then as if it were filed on the day the amended complaint was filed. That would fully satisfy the legislative purpose and yet avoid the unnecessary clerical and paperwork involved in dismissing one action and filing another. It is also consistent with the general principles governing both the amendment of pleadings and the doctrine of "relation back."

The Court of Appeals has long taken the view that amendments should be freely allowed in order to promote justice. *See* Md.Rule 2–341(c); *Crowe v. Houseworth,* 272

Md. 481, 485, 325 A.2d 592 (1974). But not every amendment, even though allowable, is given retrospective effect, especially when giving it such effect will cause prejudice to or affect the substantive rights of other parties. In determining whether to give an amendment retrospective effect for purposes of a statute of limitations, for example, the Court has held that "[t]he modern view seems to be that so long as the operative factual situation remains essentially the same, no new cause of action is stated by a declaration framed on a new theory or invoking different legal principles." *Id.* at 485–86, 325 A.2d 592.

Here, of course, the "operative factual situation" is not the same. Until December 26, 1986, at the latest, appellants were jurisdictionally without a cause of action. To apply the doctrine and give them their action *nunc pro tunc* would, as the trial court noted, "render the requirements for institution of a claim under the Tort Claims Act meaningless."

We shall vacate the judgment dismissing the amended complaint and remand the case for further proceedings. In reaching this result, we note the State's concern that, by allowing appellants to amend their complaint rather than forcing them to file anew, we are sending the "wrong message." We do not agree. Forcing needless paperwork on appellants, as well as on the court, is hardly an appropriate response to the premature filing. We suggest, for the future, that if plaintiffs file actions subject to the Tort Claims Act without having complied with the prerequisites of that Act, a better response would be a request for sanctions under Md.Rule 1–341, at least where the non-compliance was knowing and deliberate.

JUDGMENT VACATED; CASE REMANDED TO CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COST TO BE PAID ONE–HALF BY APPELLANTS, ONE–HALF BY APPELLEES.